**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

GREGORY MARONEY, on behalf of himself and all others similarly situated,

Plaintiff,

v.

WOODSTREAM CORPORATION,

Defendant.

**CASE NO.**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Gregory Maroney ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendant Woodstream Corporation ("Defendant").

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of Victor PestChaser Rodent Repellers (the "Repellers") in the United States.

2. The Repellers purport to repel rodents through "ultrasound" technology. The packaging states that "[r]odent activity can be reduced in 6 to 10 days" that the Repellers are for "use anywhere indoors," and that "each unit lasts 3 to 5 years:"




| VICTOR® MINI PESTCHASER® WITH NIGHTLIGHT - 3 UNITS | |
|---|---|
| Model # | M753SN |
| Power Source | Wall Outlet (110-volt) |
| For Use In | Average-sized rooms, including kitchens, dining rooms, bedrooms, bathrooms, basements and living rooms |
| Number of devices | 3 |
| Features | • Mini size, discreet design, maximized coverage<br>• Technology prevents rodents from becoming accustomed to the ultrasound<br>• No chemicals or poisons<br>• Cannot be heard by humans and non-rodent pets<br>• Use anywhere indoors<br>• Rodent activity can be reduced in 6 to 10 days<br>• Each unit lasts 3 to 5 years |
| Usage Notes | • Clear all surrounding objects away from the device. The ultrasound emitted by it does not travel through walls, furniture, cabinets or any other object.<br>• Uses less than a penny a day in energy costs. |

3. Unfortunately for consumers, however, the Repellers are a complete sham. Decades of studies and dozens of peer-reviewed tests have repeatedly and uniformly shown that that ultrasound is incapable of repelling rodents.

4. Moreover, ultrasonic sound waves cannot penetrate solid objects and are readily absorbed by soft objects. Thus, even if the technology were theoretically effective in some sense, it could still never be effective in any real-world environment with furniture, carpeting, cabinets, bedding and the like.

5. Defendant's representations that the Repellers will work in "kitchens, dining rooms, bedrooms, bathrooms, basements and living rooms" are therefore unquestionably false. In real life, no person keeps these rooms devoid of carpeting, bedding, furniture, and other objects which would prevent the sound waves from reaching the rodents in the first place.

6. It gets worse. Because the sound waves cannot penetrate solid objects, in cannot reach rodents hiding behind walls or underneath floors.

7. That is a crucial point. Rodents do not reside out in the open. By nature, they seek harborage in hidden spots where they make their nests. But those spots are precisely the places where the ultrasonic sound waves cannot reach.

8. Thus, in a best-case scenario, even if the technology worked (which it does not), it would just cause rodents to relocate to other portions of people's home, only exacerbating the problem. As Michael F. Potter, a professor of entomology at the University of Kentucky, has explained regarding ultrasonic devices, "[i]f … rodents did happen to avoid the device, control of infestations still would be unlikely since they would simply relocate elsewhere in the building. Using repellents indoors often make pest problems worse since the displaced individuals often repopulate in harder to reach locations (behind and between walls, floors, and ceilings; deep within clutter and storage; hidden voids of cabinets, appliances and furniture; etc.)."[1]

9. Because of this, it is unsurprising that consumer complaints regarding the ineffectiveness of Defendant's Repellers are manifest. As detailed below, actual video footage proves that the Repellers do not work by showing that mice are completely unbothered by them.

10. There is only one reason anybody would ever purchase one of Defendant's Repellers. That is because they have a rodent problem and they wish to rid their house of the rodents. But the Repellers will not do this. They have no functional purpose whatsoever. They are ineffective and worthless.

## PARTIES

11. Plaintiff Gregory Maroney is a citizen of New York who resides in Wurtsboro, New York. Mr. Maroney purchased a Victor 3-pack Mini PestChaser Rodent Repeller with

[1] *See Hart v. BHH, LLC*, No. 135-9 at ¶ 91 (S.D.N.Y. Mar. 9, 2018).

Nightlight from Walmart in Middletown, New York, in or about September 2018 for approximately $20. Prior to purchase, Mr. Maroney carefully read the Repellers' labeling, including the representations that it was a "Rodent Repeller" that would repel rodents through "ultrasound" technology, that "[r]odent activity can be reduced in 6 to 10 days" that the Repellers are for "use anywhere indoors," and that "each unit lasts 3 to 5 years." Mr. Maroney understood these statements to mean that the Repellers would effectively repel rodents and reduce rodent activity in his house for 3-5 years, and relied on them in that he would not have purchased the Repellers at all, or would have only been willing to pay a substantially reduced price for the Repellers had he known that these representations were false and misleading.

12. Defendant Woodstream Corporation is a Pennsylvania corporation with its principal place of business in Lancaster, Pennsylvania. Defendant distributes the Repellers throughout the United States.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff resides in this District and Defendant does business throughout this District.

15. All conditions precedent necessary for filing this Complaint have been satisfied and/or such conditions have been waived by the conduct of the Defendant.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A. Video Evidence Shows that Defendant's Repellers Do Not Work

16. Multiple videos accessible on the Internet show that Defendant's Repellers simply do not work.[2]

17. In one video, a simple "mouse feeding station" was constructed. The station consisted of a wooden box with a clear lid. The box contained a small hole for rodents to enter and/or exit the box:




18. Sunflower seeds were added to the station, which was left in a barn. First, the station was tested without the repeller for several nights. As expected, each night, rodents entered to eat the sunflower seeds:

[2] *See*, *e.g.*, https://www.youtube.com/watch?time_continue=10&v=yZIy0lRxvPY (last accessed Sep. 5, 2019).




19. Next, after it was confirmed to be operational, a Victor PestChaser Rodent Repeller was plugged into an extension cord and stuck into the station (under the lid) for a night. Unsurprisingly, the mice were completely undeterred by the Repeller and continued to enter the station as they had on the previous nights:




20. Based on this, the person who conducted the experiment concluded as follows:

> "Last night we set up the test station in the barn with sunflower seeds and the rodent repeller, and as you can see, all the bait is gone. Even though we placed seeds only a few inches away from the device, mice had no problem coming in, eating the food. They didn't seem too bothered by the sound. This claims to be "rodent repeller," but after seeing it in action, I don't think I can recommend this device."

B. **<u>Decades Of Study And Dozens Of Peer Reviewed Experiments Show That Ultrasonic Technology Does Not Work</u>**

21. No credible entomologist would be surprised by the above-referenced video footage. That is because entomologists have been examining the efficacy of ultrasonic devices for repelling and controlling rodents, as well as a host of other pests for decades. These tests uniformly show the same thing: ultrasonic repellers do not work, period. The number of peer-reviewed or otherwise credible tests concluding that such devices can be effective to date is zero.

22. After reviewing the data, one textbook summarized that: [t]here are no indications that ultrasonic devices, as a single or long method, will control rodents, and regardless of the desire for a "magic bullet,' ultrasonic devices are useless for the control of insect pests."[3]

23. Often called the "bible of pest control," the *Mallis Handbook of Pest Control* states: "Despite a history of 35 years of availability and use, the overwhelming majority of the professionals in the pest management industry on a global scale have failed to embrace ultrasonic devices, even as a supplement to conventional rodent control programs. Certainly, this reluctance cannot be written off as an oversight by on-the-job professionals."[4]

24. To be sure, it is easy to see how people might have believed that the technology had potential once upon a time. Rodents can hear ultrasound, and may even be very briefly disturbed by the soundwaves. The problem is, however, that they very quickly become habituated to ultrasound, and begin to completely disregard it within hours of activating a device.

25. That is why one peer reviewed article concluded:

> "It is well established that such (ultrasonic) devices will not exterminate, kill, or drive rodents out of a favorable habitat. At best, they may temporarily discourage rodents from visiting areas in buildings that have little cover available… most rats and other rodents quickly become accustomed to any new sound, especially after it has been repeated long enough."[5]

Another peer-reviewed study found that:

> "None of the units produced anything more than a partial repellency for a day or so which was overcome, regardless of whether the frequency was variable, random, or intermittent."[6]

---

[3] Wood, F.E. 1986. Nonpesticidal components essential to pest management. pp.129-162. In *Advances in Urban Pest Management*. (G.W. Bennett and J.M. Owns ed.). New York, NY.

[4] Corrigan, R.C. 2011. Rats and Mice. pp. 11-149. In *Handbook of Pest Control* (10th edition). (S.A. Hedges ed.). Franzak & Foster, Cleveland, OH.

[5] Howard, W.E. and R.E. Marsh. 1985. Ultrasonics and electromagnetic control of rodents. Acta Zool. Fennica 173: 187-189.

Another found that:

> "In our experiments, ultrasonics did not repel rats and mice from any of the tested areas… Eight years of evaluation of basic principles inherent to the use of acoustical frightening devices produced only negative results. None of the combinations tested will effectively extirpate rodents from a storage building by stimulating their receptors."[7]

Another found that:

> "Despite the wide range of decibel levels and frequencies evaluated, strong, sustained repellent effects were never detected…the six devices had insufficient repellency to merit any usefulness in rodent pest control applications, preventive or corrective"[8]

Another found that:

> "There have been so many failures reported with high-frequency sound that little can be said in favor of such devices."[9]

26. There is no room for dispute on this issue. Entomologists and other pest control experts have reached a consensus: Ultrasonic devices simply do not work.

C. **Even If Ultrasonic Technology Did Work, The Repellers Still Would Not Effectively Repel Rodents In Residences Or Any Other Real-Word Environment**

27. From flat-earthers to alchemy enthusiasts, even debunked scientific theories can still have proponents. However, even those who "believe" in the efficacy of ultrasonic devices would readily admit that, purely as a matter of physics, they cannot work in any residence or other real-world environment.

---

[6] Meehan, A.P. 1984. *Rats and Mice: Their Biology and Control.* Rentokil Library Series. 383pp

[7] Sprock, W.L., W.E. Howard, and F.C. Jacob. 1967. Sounds as a deterrent to rats and mice. Journal of Wildlife Management. 31: 729-741.

[8] Shumake, S.A. 1995. Electronic rodent repellent devices: a review of efficacy test protocols and regulatory actions. In *Repellents in Wildlife Management*. pp 253-270. USDA. Ft. Collins, CO.

[9] Koehler, A.E., R.E. Marsh, and T.P. Salmon. 1990. Frightening methods and devices/stimuli to prevent mammal damage – a review. In *Proceedings of the 14th Vertebrate Pest Conference*. 168-173. Lincoln, NE.

28. As Dr. Potter has explained: "Ultrasonic sound waves are highly directional, and are unable to penetrate or bend around solid objects such as cabinets, doors, furniture, appliances, walls, floors or ceilings. The waves are also rapidly absorbed by soft-textured materials such as cloth, paper, cardboard, and insulation. Consequently, they cannot reach cracks, crevices, voids, corners, and other protected places where most pests live (Koehler et. al 1986; Bomford and O'Brien 1990; Shumake 1995)."[10]

29. Even Defendant acknowledged this in an apparent attempt at making a disclaimer on the back of the Repeller packaging, which states: "the ultrasound emitted does not travel through walls, furniture, cabinets, or any other object."

30. But that is precisely why (among other reasons) the Repellers cannot work. Everybody's kitchens have cabinets. All people's houses have furniture and beds. These are realities of life. A product that cannot work in the presence of these items cannot work in any real person's house. And in the best-case scenario, it would simply cause the pests to relocate to other areas of the home, thereby exacerbating the problem rather than actually addressing it.

D. **History of FTC Warning Ultrasonic Pest Repeller Manufacturers**

31. In May of 2001, the FTC sent warning letters to over 60 manufacturers and retailers of ultrasonic pest-control devices. After investigation, the FTC found that many of the advertisements make explicit false claims about the products' ability to eliminate rodents or repel insects. According to FTC staff, these types of claims may not be in compliance with the FTC Act, which prohibits false and deceptive advertising.

32. From 1985 to 1997, the FTC brought actions against six companies that made false claims about the effectiveness of ultrasonic devices in controlling rodent and insect infestations.

[10] *See Hart v. BHH, LLC*, No. 135-9 at ¶ 16.

33. The types of claims challenged by the FTC included representations that ultrasonic devices can eliminate rodent infestations, repel insects, and serve as an effective alternative to conventional pest-control products, among others.

34. Prior FTC complaints alleged that any reaction by rodents to ultrasonic sound would be temporary at best because rodents become accustomed to ultrasonic sound, and will return to their nesting or feeding areas even in the presence of an ultrasonic device.

**CLASS REPRESENTATION ALLEGATIONS**

35. Mr. Maroney seeks to represent a class defined as all persons in the United States who purchased the Repellers (the "Class"). Excluded from the Class are persons who made such purchase for purpose of resale.

36. Mr. Maroney also seeks to represent a subclass defined as all Class members who purchased the Repellers in New York (the "New York Subclass").

37. Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and New York Subclass number in the millions. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

38. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to whether Defendant's labeling, marketing and promotion of the Repellers is false and misleading.

39. The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing and promotional

materials and representations, purchased the Repellers, and suffered a loss as a result of that purchase.

40. Plaintiff is an adequate representative of the Class and New York Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

41. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**

**Deceptive Acts Or Practices, New York Gen. Bus. Law § 349**

42. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

43. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

44. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the label of the Repellers.

45. The foregoing deceptive acts and practices were directed at consumers.

46. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability of the Repellers to repel rodents.

47. Plaintiff and members of the New York Subclass were injured as a result because (a) they would not have purchased the Repellers if they had known that the Repellers were ineffective to repel rodents, and (b) they overpaid for the Repellers on account of the misrepresentations that it is a "Rodent Repeller" that repels rodents through "ultrasound" technology, that "[r]odent activity can be reduced in 6 to 10 days" that the Repellers are for "use anywhere indoors," and that "each unit lasts 3 to 5 years."

48. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**

**False Advertising, New York Gen. Bus. Law § 350**

49. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

50. Plaintiff brings this claim individually and on behalf of members of the New York Subclass against Defendant.

51. Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation

of Section 350 of the New York General Business Law by misrepresenting that the Repellers are effective at repelling rodents.

52. The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

53. This misrepresentation has resulted in consumer injury or harm to the public interest.

54. As a result of this misrepresentation, Plaintiff and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Repellers if they had known that the Repellers were ineffective to repel rodents, and (b) they overpaid for the Repellers on account of the misrepresentation that it is a "Rodent Repeller" that repels rodents through "ultrasound" technology, that "[r]odent activity can be reduced in 6 to 10 days" that the Repellers are for "use anywhere indoors," and that "each unit lasts 3 to 5 years."

55. On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## **COUNT III**

### **Unjust Enrichment**

56. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

57. Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

58. Plaintiff and Class members conferred benefits on Defendant by purchasing the Repellers.

59. Defendant has knowledge of such benefits.

60. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Repellers. Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Repellers are a "Rodent Repeller" that repels rodents through "ultrasound" technology, that "[r]odent activity can be reduced in 6 to 10 days" that the Repellers are for "use anywhere indoors," and that "each unit lasts 3 to 5 years."

61. Because Defendants' retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

**COUNT IV**

**Breach of Express Warranty**

62. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

63. Plaintiff brings this claim individually and on behalf of members of the Class and New York Subclass against Defendant.

64. In connection with the sale of the Repellers, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Repellers are a "Rodent Repeller" that repels rodents through "ultrasound" technology, that "[r]odent activity can be reduced in 6 to 10 days" that the Repellers are for "use anywhere indoors," and that "each unit lasts 3 to 5 years."

65. In fact, the Repellers do not conform to the above-referenced representations because the Repellers are ineffective.

66. Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Repellers if they had known that the Repellers were ineffective to repel rodents, and (b) they overpaid for the Repellers on account of the misrepresentation that it is a "Rodent Repeller" that repels rodents through "ultrasound" technology, that "[r]odent activity can be reduced in 6 to 10 days" that the Repellers are for "use anywhere indoors," and that "each unit lasts 3 to 5 years."

**COUNT V**

**Fraud**

67. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

68. Plaintiff brings this claim individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

69. As discussed above, Defendant misrepresented on the Repellers' labeling that it is a "Rodent Repeller" that repels rodents through "ultrasound" technology, that "[r]odent activity can be reduced in 6 to 10 days" that the Repellers are for "use anywhere indoors," and that "each unit lasts 3 to 5 years."

70. The false and misleading representations and omissions were made with knowledge of their falsehood. Defendant is a top distributor of pest repellant products in the United States who is undoubtedly aware of the studies finding that its product does not work and of the FTC investigation referenced above. Nonetheless, Defendant continues to sell its ineffective and worthless Repellers to unsuspecting consumers.

71. The false and misleading representations and omissions were made by Defendant, upon which Plaintiff and members of the proposed Class and New York Subclass reasonably and justifiably relied, and were intended to induce and actually induced Plaintiff and members of the proposed Class and New York Subclass to purchase the Repellers.

72. The fraudulent actions of Defendant caused damage to Plaintiff and members of the proposed Class and New York Subclass, who are entitled to damages and other legal and equitable relief as a result.

**COUNT VI**

**Magnuson-Moss Warranty Act**

73. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

74. Plaintiff brings this case individually and on behalf of the members of the proposed Class and New York Subclass against Defendant.

75. The Repellers are a consumer product as defined in 15 U.S.C. § 2301(1).

76. Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

77. Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

78. In connection with the sale of the Repellers, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that it is a "Rodent Repeller" that repels rodents through "ultrasound" technology, that "[r]odent activity can be reduced in 6 to 10 days" that the Repellers are for "use anywhere indoors," and that "each unit lasts 3 to 5 years."

79. In fact, the Repellers are ineffective for their intended purpose of repelling rodents and reducing rodent activity for 3-5 years, and do not conform to these representations.

80. By reason of Defendant's breach of warranty, Defendant violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiff and Class members.

81. Plaintiff and Class members were injured as a direct and proximate result of Defendant's violation because (a) they would not have purchased the Repellers if they had known that they were ineffective for their stated purposes, and (b) they overpaid for the

Repellers on account of the misrepresentations that it is a "Rodent Repeller" that repels rodents through "ultrasound" technology, that "[r]odent activity can be reduced in 6 to 10 days" that the Repellers are for "use anywhere indoors," and that "each unit lasts 3 to 5 years."

## RELIEF DEMANDED

82. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a. For an order certifying the nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and New York Subclass members;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

h. For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: September 5, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ *Yitzchak Kopel*
Yitzchak Kopel

Scott A. Bursor
Yitzchak Kopel
Andrew L. Obergfell
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: scott@bursor.com
ykopel@bursor.com
aobergfell@bursor.com

*Attorneys for Plaintiff*