**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GREGORY MARONEY AND HENRY H. HEUMANN, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>WOODSTREAM CORPORATION, a Pennsylvania corporation,<br><br>    Defendant. | Civil No. 7:19-cv-08294-(KMK)(JCM)<br><br><br><br>District Judge Kenneth M. Karas<br>Courtroom 521<br><br>Magistrate Judge Judith C. McCarthy<br>Courtroom 521 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' <u>MOTION FOR CLASS CERTIFICATION</u>


## REDACTED VERSION

00214375

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. SUMMARY OF COMMON FACTS .................................................................3

    A. The PestChasers Do Not Work and Defendant Knew It..............................3

        1. Defendant's Testing on The Product Repeatedly Failed .........................3

        2. Defendant's Concessions Show the Product Has No Functional Value ...................................................................................................5

III. Defendant Made the Same Common Representation to All Class Members: Its PestChasers Repel Rodents .............................................................................8

IV. THE CLAIMS TO BE CERTIFIED.................................................................10

    A. New York GBL §§ 349 and 350 ................................................................10

    B. Breach of Express Warranty ......................................................................11

    C. Magnuson-Moss Warranty Act..................................................................12

    D. Common Law Fraud ..................................................................................13

V. ARGUMENT......................................................................................................13

    A. Legal Standard ..........................................................................................13

    B. The Requirements of Rule 23(a) Are Satisfied..........................................14

        1. Numerosity.........................................................................................15

        2. Commonality......................................................................................15

        3. Typicality ...........................................................................................16

        4. Adequacy of Representation................................................................16

        5. Ascertainability ..................................................................................17

    C. The Requirements of Rule 23(b)(3) Are Satisfied......................................18

        1. Common Questions of Law or Fact Predominate..................................18

            a. Common Questions of Fact Predominate ...................................19

            b. Common Questions of Law Predominate Under the New York GBL §§ 349 and 350 Claims .............................................20

            c. Common Questions of Law Predominate For a 25-State Breach of Express Warranty Class ............................................20

            d. Common Questions of Law Predominate Under the

00214375

Common Law Fraud Claim ...........................................................21

2. Relief Can be Determined on a Classwide Basis.....................................22

3. A Class Action Is Superior to Other Available Methods of Adjudication.....................................................................................................23

VI. CONCLUSION.....................................................................................................24

00214375

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................................18, 19

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013) ...........................................................................................................19

*In re Amla Litig.*,
282 F. Supp. 3d 751 (S.D.N.Y. 2017) .........................................................................19

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
3 N.Y.3d 200 (2004) ...........................................................................................................10

*Brady v. Basic Rsch., L.L.C.*,
101 F. Supp. 3d 217 (E.D.N.Y. 2015) .........................................................................13

*Brownell v. Starbucks Coffee Co.*,
681 F. Supp. 3d 27 (N.D.N.Y. 2023) ...........................................................................11

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) ...........................................................................................19

*Cambridge v. Telemarketing Concepts*,
655 N.Y.S.2d 795 (1997) ...................................................................................................10

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ...............................................................................................................22

*Consol. Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) ...............................................................................................15

*Curley v. AMR Corp.*,
153 F.3d 5 (2d Cir. 1998) ...................................................................................................21

*Deflumer v. Overton*,
176 F.R.D. 55 (N.D.N.Y. 1997) ......................................................................................15

*Desarrolladora Farallon S. de R.L. de C.V. v. Cargill Fin. Servs. Int'l*,
666 Fed. Appx. 17 (2d Cir. 2016) ..................................................................................20

*Diaz v. Paragon Motors of Woodside, Inc.*,
424 F. Supp. 2d 519 (E.D.N.Y. 2006) .........................................................................13

iii

*In re Drexel Burnham Lambert Grp.*,
　960 F.2d 285 (2d Cir. 1992)..................................................................17

*Ebin v. Kangadis Food, Inc.*,
　297 F.R.D. 561 (S.D.N.Y. 2014) ................................................. *passim*

*In re Facebook, Inc.*,
　312 F.R.D. 332 (S.D.N.Y. 2015) .........................................................14

*Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co. LLC*,
　382 Fed. Appx. 110 (2d Cir. 2010)......................................................12

*Famular v. Whirlpool Corp.*,
　No. 16CV944 (VB), 2019 U.S. Dist. LEXIS 44907
　(S.D.N.Y. Mar. 18, 2019) ...........................................................11, 20

*Fogarazzao v. Lehman Bros., Inc.*,
　232 F.R.D. 176 (S.D.N.Y. 2005) .........................................................16

*Galoski v. Applica Consumer Prods.*,
　309 F.R.D. 419 (N.D. Ohio 2015) .....................................................1, 20

*Gortat v. Capala Bros.*,
　257 F.R.D. 353 (E.D.N.Y. 2009) .........................................................14

*Gortat v. Capala Bros., Inc.*, No. 07-CV-3629 (ILG),
　2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010) .......................18

*Goshen v. Mut. Life Ins. Co.*,
　98 N.Y.2d 314 (2002) ........................................................................10

*Guido v. L'Oreal, USA, Inc.*,
　284 F.R.D. 468 (C.D. Cal. 2012).........................................................20

*Hart v. BHH, LLC*,
　No. 15cv4804, 2017 U.S. Dist. LEXIS 105187
　(S.D.N.Y. July 7, 2017) .......................................................... *passim*

*In re Initial Pub. Offering Sec. Litig.*,
　471 F.3d 24 (2d Cir. 2006).................................................................17

*James v. Penguin Grp. (USA) Inc.*,
　13 Civ. 2801 (DLC), 2014 U.S. Dist. LEXIS 50769
　(S.D.N.Y. Apr. 11, 2014)....................................................................10

*Koch v. Acker, Merrall & Condit Co.*,
　18 N.Y.3d 940 (2012) ........................................................................10

00214375

*Krueger v. N.Y. Tel. Co.*,
 163 F.R.D. 433 (S.D.N.Y. 1995) ...................................................................16

*Marisol A. v. Giuliani*,
 126 F.3d 372 (2d Cir. 1997).............................................................................14, 15

*Maywalt v. Parker & Parsley Petroleum Co.*,
 147 F.R.D. 51 (S.D.N.Y. 1993) ...................................................................12

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
 209 F.R.D. 323 (S.D.N.Y. 2002) ...................................................................18

*Montera v. Premier Nutrition Corp.*,
 No. 16-cv-06980-RS, 2022 U.S. Dist. LEXIS 75843 (N.D. Cal. Apr. 26, 2022)....................22

*Moore v. PaineWebber, Inc.*,
 306 F.3d 1247 (2d Cir. 2002).............................................................................13, 19

*Mullins v. Premier Nutrition Corp.*,
 No. 13-cv-01271-RS, 2019 U.S. Dist. LEXIS 229365
 (N.D. Cal. Dec. 17, 2019) ...................................................................11, 20

*Nirvana Int'l, Inc. v. ADT Sec. Servs., Inc.*,
 881 F. Supp. 2d 556 (S.D.N.Y. 2012).......................................................13

*Noble v. 93 Univ. Place Corp.*,
 224 F.R.D. 330 (S.D.N.Y. 2004) ...................................................................15, 18

*Orlander v. Staples, Inc.*,
 802 F.3d 289 (2d Cir. 2015).............................................................................10

*In re Petrobas Sec. Litig.*,
 862 F.3d 250 (2d Cir. 2017).............................................................................18

*Petrosino v. Stearn's Prods., Inc.*,
 No. 16-CV-7735 (NSR), 2018 U.S. Dist. LEXIS 55818
 (S.D.N.Y. Mar. 30, 2018) ...................................................................10

*Polvay v. FCTI, Inc.*,
 No. 22-cv-4315 (JSR), 2024 U.S. Dist. LEXIS 15399
 (S.D.N.Y. Jan. 29, 2024)...................................................................11, 20

*Robidoux v. Celani*,
 987 F.2d 931 (2d Cir. 1993).............................................................................16

*Rodriguez v. It's Just Lunch, Int'l*,
 300 F.R.D. 125 (S.D.N.Y. 2014) ...................................................................21

00214375

*Schwab v. Philip Morris USA, Inc.*,
449 F. Supp. 2d 992 (E.D.N.Y. 2006) ...................................................................19

*In re Scotts EZ Seed Litig.*,
304 F.R.D. 397 (S.D.N.Y. 2015) ....................................................................20, 22

*Seijas v. Republic of Argentina*,
606 F.3d 53 (2d Cir. 2010).......................................................................................23

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
559 U.S. 393 (2010)..................................................................................................13

*Sharpe v. A&W Concentrate Co.*,
No. 19-cv-768 (BMC), 2021 U.S. Dist. LEXIS 160177 (E.D.N.Y. July 23,
2021) .........................................................................................................................23

*Steigerwald v. BHH, LLC*,
No. 1:15CV741, 2016 U.S. Dist. LEXIS 21116
(N.D. Ohio Feb. 22, 2016) ............................................................................. *passim*

*Steinberg v. Nationwide Mut. Ins. Co.*,
224 F.R.D. 67 (E.D.N.Y. 2004) ..............................................................................12

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ..................................................................................19

*Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*,
262 F.3d 134 (2d Cir. 2001).....................................................................................14

*In re Visa Check/MasterMoney Antitrust Litig.*,
280 F.3d 124 (2d Cir. 2001).....................................................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011).............................................................................................14, 15

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ..................................................................................19

*Yamagata v. Reckitt Benckiser LLC*,
No. 17-cv-03529-VC, 2019 U.S. Dist. LEXIS 117599
(N.D. Cal. June 5, 2019) ....................................................................................11, 20

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (6th Cir. 2012) ..................................................................................18

**Statutes**

15 U.S.C. § 2310(d)(1) ..................................................................................................12

00214375

N.Y. Gen. Bus. Law § 349.................................................................................................... *passim*

N.Y. Gen. Bus. Law §  350................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................................................14

Fed. R. Civ. P. 23(a)(1)..........................................................................................................14, 15

Fed. R. Civ. P. 23(a)(2)................................................................................................................15

Fed. R. Civ. P. 23(a)(3)................................................................................................................16

Fed. R. Civ. P. 23(a)(4)................................................................................................................16

Fed. R. Civ. P. 23(b) ......................................................................................................14, 18, 22

Fed. R. Civ. P. 23(b)(3)..................................................................................................18, 19, 23

00214375

## I. INTRODUCTION

This case is well-suited for class certification. Plaintiffs allege that Defendant Woodstream Corporation's Victor-brand ultrasonic PestChasers do not repel rodents as represented on their packaging and therefore are worthless for their advertised purpose. Defendant contends that they work as advertised and indeed repel rodents. A jury can determine whether the devices work as advertised or not based primarily on scientific evidence, thereby presenting the predominating class-wide issue.

Courts in this district and elsewhere are three for three in certifying cases brought by consumers involving ultrasonic rodent repellers, the same product category at issue in this case. *See, e.g., Galoski v. Applica Consumer Prods.*, 309 F.R.D. 419 (N.D. Ohio 2015) (certifying multistate breach of express warranty claim); *Hart v. BHH, LLC*, No. 15cv4804, 2017 U.S. Dist. LEXIS 105187 (S.D.N.Y. July 7, 2017) (certifying nationwide fraud, multistate breach of express warranty, and California state consumer protection claims); and *Steigerwald v. BHH, LLC*, No. 1:15CV741, 2016 U.S. Dist. LEXIS 21116 (N.D. Ohio Feb. 22, 2016) (certifying nationwide fraud claim and multistate breach of express warranty claim). Plaintiffs are unaware of any case finding that litigation over the efficacy of ultrasonic repellers is unsuitable for class certification.

As Judge Pauley observed in *Hart*, certification of this category of cases is appropriate because Plaintiffs and the class "relied on the same alleged misrepresentations of fact regarding the efficacy of the pest repeller, and suffered the same economic harm." 2017 U.S. Dist. LEXIS 105187, at *15. As in *Hart*, "class members' claims arise from generally the same course of events—they watched or read an advertisement, relied on the product representations, and purchased the product. In seeking relief, they will make essentially the same argument to prove liability—that [Defendant] knew its products were ineffective yet marketed and sold them

anyway." *Id.* at \*16. If, as Plaintiffs allege, the PestChasers do not repel pests, "then all class members were damaged in the same manner. All class members were subject to the same representation, same loss, and same damage." *Steigerwald*, 2016 U.S. Dist. LEXIS 21116, at \*6.

Plaintiffs accordingly seek to certify six classes: a nationwide class asserting claims for fraud; two nationwide subclasses asserting claims for fraud (to address statutes of limitations); a multistate class asserting a claim for breach of express warranty; a multistate subclass asserting a claim for breach of express warranty (to address statutes of limitations); and a New York-only subclass asserting claims under New York General Business Law ("GBL") §§ 349 and 350. The proposed class definitions are as follows:

> **Nationwide Fraud Class**: "All persons who purchased one or more Victor PestChaser Rodent Repellers in the United States from August 29, 2013, until the date notice is provided to the Class."
>
> **Nationwide Fraud Subclass 1 (3-year statute)**: "all persons who purchased one or more Victor PestChaser Rodent Repellers in the states of Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Idaho, Maryland, Massachusetts, Mississippi, Nevada, New Hampshire, North Carolina, South Carolina, Tennessee, Utah, and Washington from August 29, 2016, until the date notice is provided to the Class."
>
> **Nationwide Fraud Subclass 2 (2-year statute)**: "all persons who purchased one or more Victor PestChaser Rodent Repellers in the states of Alabama, Alaska, Kansas, Montana, Oklahoma, Oregon, Pennsylvania, Virginia, and West Virginia from August 29, 2017, until the date notice is provided to the Class."
>
> **Multistate Breach of Express Warranty Class (4 year statute)**: "All persons who purchased one or more Victor PestChaser Rodent Repellers in the states of Alaska, California, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming, from August 29, 2015, until the date notice is provided to the Class."
>
> **Multistate Breach of Express Warranty Subclass (3-year statute)**: "all persons who purchased one or more Victor PestChaser Rodent Repellers in the state of Colorado from August 29, 2016, until the date notice is provided to the Class."

00214375

**New York Subclass**: "All persons who purchased one or more Victor PestChaser Rodent Repellers in the United States from August 29, 2015, until the date notice is provided to the Class."

Each proposed Class and Subclass is limited to the applicable statutes of limitations for the various jurisdictions. Excluded from each Class and Subclass are the Defendant, its officers, directors, and employees, and those who made such purchase for purpose of resale.

Finally, Plaintiffs request that they be appointed class representatives and further request the Court appoint as class counsel Timothy G. Blood of Blood Hurst & O'Reardon, LLP and Yitzchak Kopel of Bursor & Fisher, P.A.

## II. SUMMARY OF COMMON FACTS

### A. The PestChasers Do Not Work and Defendant Knew It

As Defendant's corporate designees confirmed, the sole advertised purpose of PestChasers is to repel rodents. Declaration of Timothy G. Blood in Support of Plaintiffs' Motion for Class Certification ("Blood Decl."), Ex. 1 (Brown Depo. at 75:7–76:4).[1]

#### 1. Defendant's Testing on The Product Repeatedly Failed

The PestChaser product was originally invented by a man named W. Lowell Robertson. Ex. 2 (Hardy Depo. at 116:22–117:1). Mr. Robertson stood to make a lot of money off the PestChaser. So he "performed" two efficacy tests on the PestChasers that purported to find 100% efficacy in causing rodents to leave premises, save for a few homeowners that discontinued their participation in the studies. Ex. 3 (1985 Study); Ex. 4 (1986 Study).

But Defendant soon discovered these results were too good to be true. Defendant commissioned three laboratory tests of the product prior to purchasing it. The first laboratory test, conducted in 1998, concluded that the PestChaser was ████████████████████████

---

[1] All "Ex." references are to the Blood Decl. unless noted otherwise.

00214375



Ex. 5 (1998 Study) at 4 (emphasis added). The second laboratory test, conducted in 1999, found the PestChaser's ultrasound was ███████████████████ Ex. 6 (1999 Study) at 4 (emphasis added). Another study performed in 1999 found that the rodents were nearly equally divided between the treatment and control – in other words, the PestChaser had no effect. Ex. 2 (Hardy Depo. at 194:1–4) ███████████████████ ███████████████ (emphasis added).

Defendant conducted a fourth laboratory test in 2004, one year after it purchased the PestChaser. The test found that the PestChaser ███████████████████ ██████ Ex. 7 (2004 Study) at 7 (emphasis added). These studies were conducted under ideal laboratory conditions which gave the PestChasers the *best chances* of success and far different conditions than a person's home. As Defendant's corporate representative acknowledged:



Q: ████████████████████████
A: ████
Q: ██████████████████
A: ████████
Q: ████████████████████████
A: ████████████████████████

Ex. 2 (Hardy Depo. at 189:3–14). They also hedged their results by providing food to the rodents in both the treatment and control areas, allowing the rodents to feed in the chamber where the PestChaser was not. In real life the PestChasers must repel hungry rodents without equivalent alternative food sources:

Q: ████████████████████████

4

00214375



A:

Q:

A:

*Id.* (Hardy Depo. at 194:10–25). Despite these laboratory testing conditions, the PestChasers still failed to show any significant repellency. Mr. Lowell's results could not be replicated, strongly calling his findings into question. But the devices are very profitable, so Defendant proceeded to sell tens of millions of dollars of the product to unsuspecting consumers.

### 2. Defendant's Concessions Show the Product Has No Functional Value

Even if the PestChasers did work under laboratory conditions (which they do not), they would still be worthless in real life. In addition to not having a meaningful effect on rodents, ultrasound is readily impeded by objects such as walls, flooring, furniture, and other objects. Ex. 2 (Hardy Depo at 101:3–102:11). This is particularly problematic for repelling rodents. But rodents do not live out in the open. Instead, they hide in and around objects. As even Defendant concedes, rodents locate their nests in ██████████ *Id.* (Hardy Depo. at 83:10–15). They spend their time ███████████████████████████ *Id.* (Hardy Depo at 83:16–24). As a result, even if the ultrasonic sound emitted by a PestChaser were effective in open spaces not blocked by or surrounded by objects and walls, which they are not, it would only ██████████████ ███████████████████ *Id.* (Hardy Depo. at 90:10–91:8). That is, if a PestChaser had any rodent repelling abilities, it would drive the rodents out of open spaces and into ███████ ████████████████████████████████████ ████████████████████████████ *Id.* (Hardy Depo. at

00214375

88:22–89:4; 86:6–16). Contrary to the promise made on the package label, PestChasers do not "reduce rodent activity in six to ten days"—its advertised purpose. If it worked at all, it would simply move rodents around the home. *Id.* (Hardy Depo. at 17:1–7).

Defendant also confirms the targeted audience for its advertisements. The product is ██████████████████████████████████████████████████ ████████ *Id.* (Hardy Depo. at 69:11–21). But Defendant cannot articulate what value this product has to the consumer if it will not fix their problem:



*Id.* (Hardy Depo. at 91:9–92:14). At best, you would just move the infestation from one place to another within the same house. Because ██████████████████████████████ the product instructs consumers to ████████████████████ *Id.* (Hardy Depo. at 95:13–20). But unless the consumer throws away all their objects in their house, this will not accomplish anything:

      Q: ████████████████████████████████████████

      A: ██████

      …

00214375

> Q:
>
> A: ▮▮▮▮▮▮▮

*Id.* (Hardy Depo at 96:25–99:7). Nor will they then stay hidden in those objects. They will still come out for food. As the corporate designee admitted: "Q: ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ A: ▮▮▮▮▮▮▮ *Id.* (Hardy Depo. at 92:15–17). In fact, Defendant's own literature answers the question: ▮▮▮▮▮▮▮ ▮▮▮ with ▮▮▮▮▮▮ Ex. 8 (WDSTRM-2942).

So what purpose does this product serve? Here is what Defendant's corporate representative said:

> Q:
>
> A: ▮▮▮▮▮▮▮▮▮▮

Ex. 2 (Hardy Depo. at 136:8–14). But Defendant has no evidence that the PestChaser even works in this manner because it never tested it:

> Q: ▮▮▮▮▮▮▮▮▮▮
>
> A: ▮▮▮▮▮▮
>
> Q:
>
> A: ▮▮▮▮

*Id.* (Hardy Depo. at 127:20–128:5). In fact, a published study produced by Defendant explained that it could do the exact opposite: ▮▮▮▮▮▮▮▮▮▮

7

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████ Ex.

9 (WDSTRM-1–10 at 9).

Simply put, Defendant had ample evidence to know that this product provided no value to consumers. Plaintiffs have retained an expert who is prepared to conduct a study on the PestChaser's efficacy. His study is modeled after the studies conducted by the plaintiff's expert's studies in *Hart*, which the court held were admissible. *See Hart*, 2018 U.S. Dist. LEXIS 121231, at *20–25.

## III. DEFENDANT MADE THE SAME COMMON REPRESENTATION TO ALL CLASS MEMBERS: ITS PESTCHASERS REPEL RODENTS

Although there are several versions of PestChasers, they are all the same for purposes of this lawsuit. All of the product packaging makes the same advertised promise: that Defendant's PestChaser will repel rodents. █████████████████████████████████████

██████████████ Ex. 2 (Hardy Depo. at 50:16–24).

Meanwhile, the packaging for each model, starting with the name "PestChaser," communicates the same advertising message: that PestChasers are "Rodent Repeller[s]" that will solve a consumer's rodent problems (the "Common Representation"). Ex. 1 (Brown Depo. at 75:7–20). Although some PestChaser models contain nightlights, all are sold for the same primary purpose–to repel rodents.

PestChasers can be purchased at brick-and-mortar stores and online, including directly from Defendant on its website. Ex. 10 (WDSTRM-24993); Ex. 1 (Brown Depo at 130:12–14; 145:2–8). Regardless of how class members purchased a PestChaser, they were exposed to Defendant's Common Representation made on every package label that PestChasers repel rodents.

Throughout the class periods, the packaging for every model of PestChaser has remained

00214375

materially the same. Each packaging label prominently states that the product is a "Rodent Repeller." *See* Ex. 11 (WDSTRM-25006–43).



The online marketing for the PestChasers also incorporates the same Common Representation. S*ee* Ex. 2 (Hardy Depo at 36:17–23). That is because the Common Representation is communicated in the name of the product and also because the marketing content for online sales is provided to the retailers by Defendant. *Id.* (Hardy. Depo. at 29:22–30:1) ███████████

██████████████████████████████████████████████████

█████████████████████

00214375

## IV. THE CLAIMS TO BE CERTIFIED

### A. New York GBL §§ 349 and 350

Plaintiffs seek to certify New York GBL §§ 349 and 350 claims on behalf of the New York Subclass. GBL section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." The purpose of section 349 is "to secure an honest marketplace where trust, and not deception, prevails." *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 323–24 (2002).[2] Section 349 was designed as a broad, remedial statute to relax traditional barriers to common law fraud and to give consumers a powerful remedy. *Cambridge v. Telemarketing Concepts*, 655 N.Y.S.2d 795, 799 (1997); *James v. Penguin Grp. (USA) Inc.*, 13 Civ. 2801 (DLC), 2014 U.S. Dist. LEXIS 50769, at *23–24 (S.D.N.Y. Apr. 11, 2014) (citing *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)). Accordingly, "the scope of the statute is intentionally broad, applying to virtually all economic activity." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 205 (2004)). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 350.

Under either statutory provision, the elements of a cause of action are the same. *Goshen*, 98 N.Y.2d at 324 n.1. To prevail under either claim, Plaintiffs must prove by a preponderance of the evidence: "'(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)). Neither section 349 nor 350 requires proof of reliance. *Koch*, 18 N.Y.3d at 941; *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735 (NSR), 2018 U.S. Dist. LEXIS 55818, at *18

---

[2] All citations, internal quotations and emphasis are omitted unless otherwise stated.

00214375

(S.D.N.Y. Mar. 30, 2018).

For the second element—"materially misleading"—"the New York Court of Appeals has adopted 'an objective definition of deceptive acts and practices.'" *Brownell v. Starbucks Coffee Co.*, 681 F. Supp. 3d 27, 36 (N.D.N.Y. 2023) (quoting *Tomassini v. FCA US, LLC*, No. 3:14-cv-1226 (MAD/DEP), 2016 U.S. Dist. LEXIS 202635, \*12 (N.D.N.Y. Nov. 23, 2016)). "The test is whether the misrepresentation or omission is 'likely to mislead a reasonable consumer acting reasonably under the circumstances.' In determining whether a reasonable consumer would be misled, '[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.'" *Id.* (quoting *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021)).

Section 349 and 350 claims are regularly certified. *See, e.g., Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014) (GBL § 349 claim in consumer product labeling misrepresentation case); *Famular v. Whirlpool Corp.*, No. 16CV944 (VB), 2019 U.S. Dist. LEXIS 44907 (S.D.N.Y. Mar. 18, 2019) (GBL §§ 349 and 350 claims involving case alleging defendant misrepresented consumer product's efficacy); *Polvay v. FCTI, Inc.*, No. 22-cv-4315 (JSR), 2024 U.S. Dist. LEXIS 15399 (S.D.N.Y. Jan. 29, 2024) (GBL §§ 349 and 350 claims); *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2019 U.S. Dist. LEXIS 229365 (N.D. Cal. Dec. 17, 2019) (same); *Yamagata v. Reckitt Benckiser LLC*, No. 17-cv-03529-VC, 2019 U.S. Dist. LEXIS 117599 (N.D. Cal. June 5, 2019) (same).

### B. Breach of Express Warranty

Plaintiffs seek certification of two multistate breach of express warranty classes. Under New York law, which governs Plaintiffs' breach of express warranty claims, "a plaintiff must [allege] an affirmation of fact or promise by the seller, the natural tendency of which was to induce

00214375

the buyer to purchase and that the warranty was relied upon." *Factory Assocs. & Exps., Inc. v. Lehigh Safety Shoes Co. LLC*, 382 Fed. Appx. 110, 111–12 (2d Cir. 2010).

Certification of a multistate class is appropriate where "a survey of potentially applicable state laws reveals no material difference that would affect the merits of the class's common law claims at trial." *Ebin*, 297 F.R.D. at 570; *see also Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 78 (E.D.N.Y. 2004) (certifying nationwide class where "the plaintiff's analysis of the variances in the applicable state law demonstrates that no 'actual conflicts' of substantive law exist"). Here, there are no material variations in the laws of the states included in this class. *See* Ex. 12 (privity chart).

For breach of express warranty claims, states with a privity requirement are not included in the requested multistate class. Based on the states chosen, the requested multistate class should be certified. These are the same states the court certified in *Hart*. As for reliance, any potential differences in various states' laws are immaterial. "[H]owever reliance is defined, it is present where the only reason a customer buys the product is to use it as a pest repeller." *Steigerwald*, 2016 U.S. Dist. LEXIS 21116, at \*24–25; *see also id*. at \*25 ("class members relied on the warranty since the sole reason for buying the product was to repel pests").

Even if minor variations among states' laws existed, "[t]his is simply not an issue on which justifies the denial of the Plaintiffs' motion for certification." *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 58 (S.D.N.Y. 1993).

### C.     Magnuson-Moss Warranty Act

Plaintiffs seek certification of their Magnuson-Moss Warranty Act claim on behalf of the Multistate Breach of Express Warranty Class. The MMWA provides consumers with a federal cause of action against warrantors for breach of written warranties. 15 U.S.C. § 2310(d)(1). The

12

MMWA does not create additional bases for recovery, but rather federalizes existing state law causes of action. *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006). Thus, a plaintiff's "breach of express warranty and MMWA claims stand or fall together." *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 234 (E.D.N.Y. 2015).

### D.    Common Law Fraud

Plaintiffs seek certification of their common law fraud claim on behalf of the nationwide class and two nationwide subclasses. New York law governs Plaintiffs' common law fraud claim. *Ebin*, 297 F.R.D. at 570. In New York, the elements of common law fraud are "(1) a misrepresentation of material fact, (2) made with fraudulent intent, (3) upon which the plaintiff reasonably relies to his (4) economic detriment." *Nirvana Int'l, Inc. v. ADT Sec. Servs., Inc.*, 881 F. Supp. 2d 556, 563 (S.D.N.Y. 2012).

Here, because Defendant uniformly misrepresented through product packaging that the PestChasers are effective at repelling rodents to all class members and the advertised purpose of the product is rodent repelling, common law fraud can be proven with generalized proof. *See Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) ("Fraud actions must ... be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof.").

### V.    ARGUMENT

### A.    Legal Standard

Rule[3] 23 "creates a categorical rule entitling a plaintiff whose suit meets the specified

---

[3]    All "Rule" references are to Fed. R. Civ. P. unless noted otherwise.

00214375

criteria to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). To qualify for certification, a plaintiff must demonstrate by a preponderance of the evidence that the putative class action meets each of the four requirements of Rule 23(a), and also satisfies at least one of the categories provided in Rule 23(b). *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132–33 (2d Cir. 2001). The Court must conduct a "rigorous analysis," which may require it to "probe behind the pleadings before coming to rest on the certification question." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The district court is afforded broad discretion in class certification questions because it is often in the best position to assess the propriety of the class action. *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001). However, the Second Circuit has emphasized that Rule 23 should be given "liberal rather than restrictive construction," *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (quoting *Sharif ex rel. Salahuddin v. N.Y. State Educ. Dep't.*, 127 F.R.D. 84, 87 (S.D.N.Y. 1989)), and "it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009). "'[I]f there is to be an error made, let it be in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.'" *In re Facebook, Inc.*, 312 F.R.D. 332, 340 (S.D.N.Y. 2015) (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 298 & n.10 (2d Cir. 1968).

### B.    The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) sets forth four prerequisites for certification: numerosity, commonality, typicality, and adequacy. Each of these requirements is satisfied.

00214375

### 1. Numerosity

To satisfy Rule 23(a)(1)'s numerosity requirement, Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, numerosity is presumed when the putative class has at least forty members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs are not required to present a precise calculation of the number of class members. *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004), "as the court may make common sense assumption to support a finding of numerosity." *Deflumer v. Overton*, 176 F.R.D. 55, 58 (N.D.N.Y. 1997) (citing *German v. Fed. Home Loan Mortg.*, 885 F. Supp. 537, 551 (S.D.N.Y. 1995)).

Here, Defendant's sales records show that its nationwide PestChaser sales, including in New York, totaled over ████████████████████████. Its sales records further show over ████████ sales totaling over ████████ in the northeast region of the United States. Ex. 13 (WDSTRM-25047). "Common sense compels the conclusion that numerosity is satisfied here." *Hart*, 2017 U.S. Dist. LEXIS 105187, at *14–15.

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is determined by assessing "the capacity of a classwide proceeding to generate common answers" to the issues presented that are "apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. For purposes of this prerequisite, "even a single question will do." *Id.* at 2556 (internal punctuation omitted). Further, the commonality requirement may be met where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377.

Commonality is readily met here. The primary issue in the case and which presents a common question is whether Defendant's PestChasers do not do what they are advertised to do:

15

repel rodents. This question is common to all class members. If that question is answered in the affirmative, then Plaintiffs have established their claims on a class basis.

### 3. Typicality

Typicality requires Plaintiffs to establish that the claims or defenses of the representative party are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). It does not require that "the factual background of the named plaintiff's case be identical with that of other members of the class ...." *Krueger v. N.Y. Tel. Co.*, 163 F.R.D. 433, 442 (S.D.N.Y. 1995). "The typicality requirement is not demanding." *Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005).

Typicality is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993). Accordingly, where "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id*. at 936–37.

Typicality is met here because the claims of Plaintiffs and the class arise out of the same course of conduct by Defendant and are based on the same legal theory. Defendant represented on the labeling of each PestChaser that it would "repel rodents," which Plaintiffs maintain is false or misleading. "In seeking relief, [Plaintiffs and class members] will make essentially the same argument to prove liability—that [Defendant] knew its products were ineffective yet marketed and sold them anyway." *Hart*, 2017 U.S. Dist. LEXIS 105187, at \*16.

### 4. Adequacy of Representation

"Under Rule 23(a)(4), adequacy of representation is measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the

00214375

class members must not have interests that are antagonistic to one another." *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992).

The first prong is satisfied because both Plaintiffs' firms are well qualified to serve as class counsel in this action. *See* Blood Decl., ¶¶ 3–6 and Ex. 14 (BHO Firm Résumé); Ex. 15 (Bursor & Fisher Résumé). Attorneys at both firms have extensive experience litigating consumer claims, including false advertising claims involving consumer products. *Id.* Moreover, Bursor & Fisher, P.A., has been appointed as class counsel in similar consumer class actions involving ultrasonic pest repellers in this district. *See, e.g., Hart*, 2017 U.S. Dist. LEXIS 105187, at *16. Both firms have been appointed class counsel in federal and state courts nationwide and have recovered tens of millions of dollars on behalf of consumers alleging claims for false or misleading advertising. *Id*.

The second prong is satisfied because Plaintiffs do not have any interest antagonistic to absent class members. Plaintiffs, like each absent class member, have a strong interest in proving Defendant's common course of conduct, establishing its unlawfulness, demonstrating the impact of the unlawful conduct, and obtaining redress. Plaintiffs have assisted their counsel in investigating the case, reviewed pleadings, assisted with discovery, been in regular contact with counsel and will soon sit for deposition. Blood Decl., ¶ 7. They have no interests antagonistic to the interests of absent class members and there are no material conflicts between their interests and the interests of absent class members.

### 5. Ascertainability

Though not explicitly stated in Rule 23, courts have found an implied requirement that the class must be adequately defined and "ascertainable" before a class action may proceed. *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 30 (2d Cir. 2006).

17

"The standard for ascertainability 'is not demanding' and is 'designed only to prevent the certification of a class whose membership is truly indeterminable.'" *Ebin*, 297 F.R.D. at 567 (quoting *Gortat v. Capala Bros., Inc.*, No. 07-CV-3629 (ILG), 2010 U.S. Dist. LEXIS 35451, at *5 (E.D.N.Y. Apr. 9, 2010)); *see also In re Petrobas Sec. Litig.*, 862 F.3d 250, 268–69 (2d Cir. 2017) (rejecting "heightened" ascertainability requirement as adopted by the Third Circuit). The class is "identifiable" if "its members can be ascertained by reference to objective criteria." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (requiring only that class definition describe objective criteria that allows prospective class member to identify himself or herself). Although membership in the class must be ascertainable "at some point in the case," it need not be determined prior to class certification. *Noble*, 224 F.R.D. at 338.

A class is ascertainable if, as here, it is defined as people "who purchased" the subject product during a stated time period. *Ebin*, 297 F.R.D. at 567. *See also id.* ("there is nothing subjective about that class definition").

### C. The Requirements of Rule 23(b)(3) Are Satisfied

Plaintiffs must also show that at least one of the three requirements of Rule 23(b) is satisfied. *Amchem Prods. v. Windsor*, 521 U.S. 591, 614–15 (1997). This case satisfies the requirements of Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

#### 1. Common Questions of Law or Fact Predominate

"Class-wide issues predominate if resolution of some of the legal or factual questions that

00214375

qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Rule 23(b)(3) calls only for "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013). The test is "readily met" in many consumer fraud cases. *Amchem*, 521 U.S. at 625. In such cases, the court's inquiry is focused on "the conduct of the defendant rather than that of individual plaintiffs, making it particularly susceptible to common, generalized proof." *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1115 (E.D.N.Y. 2006).

"[P]redominance requires a qualitative assessment too; it is not bean counting." *In re Amla Litig.*, 282 F. Supp. 3d 751, 767 (S.D.N.Y. 2017) (quoting *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013)). "An issue central to the validity of each one of the claims in a class action, if it can be resolved in one stroke, can justify class treatment. *Butler*, 727 F.3d at 801. Indeed, Circuit Courts vacate and remand if the district court "failed to recognize the question common to the claims of all putative class members: whether the [defendant's] packaging was likely to mislead a reasonable consumer." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 755 (7th Cir. 2014). *See also In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 859 (6th Cir. 2013) (predominance met because evidence will either prove or disprove if the alleged design defect caused the harm).

### a.    Common Questions of Fact Predominate

The predominant common question of fact here is whether Defendant's PestChasers work as advertised. It is the primary issue in the case, and it is common because the package labeling is

materially the same and the question of whether they work as advertised is a question of science. The issue is subject to common proof for all class members and predominates over any other question raised in this action. "The only question of fact in this case is whether the Defendant's product can, under any circumstances, act as pest repeller. This question is common to all users of the product, and, all potential class members." *Galoski*, 309 F.R.D. at 423.

### b. Common Questions of Law Predominate Under the New York GBL §§ 349 and 350 Claims

Application of the laws at issue to a common set of facts also means that any legal issue will apply to the members of each subclass. GBL §§ 349 and 350 claims are frequently certified. *See, e.g., In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 409 (S.D.N.Y. 2015) (certifying Section 349 and 350 claims relating to grass seed claim of "50% thicker"); *Ebin*, 297 F.R.D. at 568–69 (certifying GBL claims relating to "100% Pure Olive Oil"); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 477 (C.D. Cal. 2012) (certifying GBL §§ 349 and 350 claims); *Polvay*, 2024 U.S. Dist. LEXIS 15399 (same); *Mullins*, 2019 U.S. Dist. LEXIS 229365 (same); *Yamagata*, 2019 U.S. Dist. LEXIS 117599 (same).

For New York class members, a finding of liability will entitle each claimant to minimum statutory damages under GBL 349 and 350, since nearly all PestChasers sell for well under $50 for §349 and all under $500 for §350. Moreover, "materiality under Sections 349 and 350 is an objective question that does not depend on the mindset of each individual purchaser," thereby facilitating a classwide determination. *Famular*, 2019 U.S. Dist. LEXIS 44907, at *21.

### c. Common Questions of Law Predominate For a 25-State Breach of Express Warranty Class

The Multistate Breach of Express Warranty Class "can be resolved through common legal issues in multiple jurisdictions." *Steigerwald*, 2016 U.S. Dist. LEXIS 21116, at *25. Here, under New York's choice of law rules, New York express warranty law will apply because it is not

20

materially different from the other states included in the Multistate Class. *Desarrolladora Farallon S. de R.L. de C.V. v. Cargill Fin. Servs. Int'l*, 666 Fed. Appx. 17, 21 (2d Cir. 2016) ("[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.") (quoting *Allstate Ins. Co. v. Stolarz*, 81 N.Y.2d 219, 223 (1993)); *see also Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (where there is no actual conflict, a court "dispense[s] with a choice of law analysis.").

As discussed in Section IV.B, *supra*, Plaintiffs seek to certify a Multistate Breach of Express Warranty Class that includes states that do not require privity, *see* Ex. 12 (privity chart), and differences among state law with respect to reliance is not an issue because "however reliance is defined, it is present where the only reason a customer buys the product is to use it as a pest repeller." *Steigerwald*, 2016 U.S. Dist. LEXIS 21116, at *24–25

### d. Common Questions of Law Predominate Under the Common Law Fraud Claim

Because Plaintiffs' fraud claim is "based on uniform representations made to all members of the class," the predominance requirement is satisfied. *Hart*, 2017 U.S. Dist. LEXIS 105187, at *23. As explained by the court in *Hart*: "Many elements of a fraud claim—misrepresentation, reliance, and causation—are easily addressed through generalized proof of the product's label and proof of plaintiffs' purchases." *Id.*

Certification of a nationwide fraud class is appropriate here. As the *Steigerwald* court found:

> [A]ll states (except Louisiana and North Dakota which have only have statutory fraud claims) recognize black letter common law fraud in the sales context: a representation intended to be relied on by the customer, which results in purchase of the product, where the supplier knows the representation is untrue. Defendants' conduct in providing a product used for only one reason, to repel pests, and selling it by representing that it repels pests when defendants knew it did not, is fraud in all jurisdictions.

00214375

2016 U.S. Dist. LEXIS 21116, at *24. *See also Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 136 (S.D.N.Y. 2014) (certifying nationwide fraud claim in case involving misrepresentations to consumers). Certification of a nationwide fraud class is similarly appropriate here.

### 2. Relief Can be Determined on a Classwide Basis

Rule 23(b) requires only that Plaintiffs show that "damages are capable of measurement on a classwide basis." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). If the PestChasers do not repel rodents as promised, then purchasers did not receive what they thought they were buying. Damages calculations under these circumstances are straightforward: the PestChaser devices are worthless for their advertised purpose because they do not repel rodents, entitling class members to refunds. *See Steigerwald*, 2016 U.S. Dist. LEXIS 21116, at *19 ("[T]he only purpose of the device was to repel pests. If the product was incapable of doing so, it was worthless.") A full refund damages model is appropriate here. *In re Scotts EZ Seed*, 304 F.R.D. at 408 ("Plaintiffs are entitled to maintain a class seeking out-of-pocket damages returning the consideration paid ... minus the actual value plaintiffs claim they received, which is zero. In other words, the class members may seek to recover the full [amount] they paid to defendants as damages. Plaintiffs will succeed or fail on this theory based on whether they are able to prove [defendants' product] is worthless."); *see also Montera v. Premier Nutrition Corp.*, No. 16-cv-06980-RS, 2022 U.S. Dist. LEXIS 75843, at *41 (N.D. Cal. Apr. 26, 2022) ("Plaintiffs may pursue a full refund theory of liability…" where plaintiff alleged the "product is valueless.")

Defendant's PestChaser sales and the average retail prices can be ascertained from Defendant's records. Ex. 16 (Def. Resp. to 3rd Set of Interrog.) at 8–9.

As for Plaintiffs' GBL §§ 349 and 350 claims, the GBL provides statutory damages of $50 under § 349 and $500 under § 350. N.Y. Gen. Bus. Law §§ 349(h), 350-e(3). Since the purchase

22

00214375

prices for the PestChasers are almost all under $50, nearly all class members will choose statutory damages, which "can be assessed on the basis of common proof." *Sharpe v. A&W Concentrate Co.*, No. 19-cv-768 (BMC), 2021 U.S. Dist. LEXIS 160177, at \*18 (E.D.N.Y. July 23, 2021) (quoting *Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70, 87 (2d Cir. 2015)).

### 3. A Class Action Is Superior to Other Available Methods of Adjudication

Rule 23(b)(3) sets forth the relevant factors for determining whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These factors include: (i) the class members' interest in individually controlling separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action. *Id.*

The Rule 23(b)(3) "superiority" factors weigh heavily in favor of class certification. Where proceeding individually would be prohibitive due to the minimal recovery, "the class action device is frequently superior to individual actions." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). The MSRP of the Victor PestChaser bearing model number M751PS, for instance, is $12.99. Ex. 17 (WDSTRM-19231 at 35). The small amount at issue for each class member renders individual litigation infeasible. A class action offers the potential for meaningful redress to the class.

///

///

///

///

00214375

## VI. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their motion for class certification, appoint Plaintiffs as Class Representatives, and appoint their counsel as Class Counsel.

Respectfully submitted,

Dated: June 25, 2024

BLOOD HURST & O'REARDON, LLP

By:   *s/ Timothy G. Blood*

Timothy G. Blood (*admitted pro hac vice*)
James M. Davis (*admitted pro hac vice*)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
jdavis@bholaw.com

BURSOR & FISHER, P.A.
Scott A. Bursor
Yitzchak Kopel
888 Seventh Avenue
New York, NY  10019
Tel: 646/837-7150
212/989-9163 (fax)
scott@bursor.com
ykopel@bursor.com

BURSOR & FISHER, P.A.
Stephen A. Beck (*admitted pro hac vice*)
701 Brickell Avenue, Suite 1420
Miami, FL  33131
Tel: 305/330-5512
305/679-9006 (fax)
sbeck@bursor.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 25, 2024, a copy of the foregoing document was electronically filed with the United States District Court, Southern District of New York, via the Court's CM/ECF filing system, which will send notification of such filing to counsel of record, on June 25, 2024.

*s/ Timothy G. Blood*
Timothy G. Blood

00214375