UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREGORY MARONEY, et al.

Plaintiffs,

v.

WOODSTREAM CORPORATION,

Defendant.

No. 19-CV-8294 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Aleksandr J. Yarmolinets, Esq.
James Davis, Esq.
Timothy G. Blood, Esq.
Blood Hurst O'Reardon, LLP
San Diego, CA
*Counsel for Plaintiffs*

Andrew Obergfell, Esq.
Caroline C. Donovan, Esq.
Yitzchak Kopel, Esq.
Bursor & Fisher, P.A.
New York, NY
*Counsel for Plaintiffs*

Stephen A. Beck, Esq.
Bursor & Fisher P.A.
Miami, FL
*Counsel for Plaintiffs*

Jay P. Lefkowitz, Esq.
Kirkland & Ellis LLP
New York, NY
*Counsel for Defendant*

Jacob Feiler, Esq.
Robyn E. Bladow, Esq.
Savannah Jensen, Esq.
Kirkland & Ellis LLP
Los Angeles, LA
*Counsel for Defendant*

Leonora Cohen, Esq.
Gibson, Dunn & Crutcher LLP
Los Angeles, LA
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

Plaintiffs Gregory Maroney ("Maroney") and Henry Heumann ("Heumann") (collectively, "Plaintiffs") bring this putative class action against Woodstream Corporation ("Woodstream" or "Defendant"), alleging that the labeling on Defendant's Victor-brand ultrasonic PestChasers (the "PestChasers") are advertised in a manner which is false and misleading. (*See* Second Amended Complaint ("SAC") ¶¶ 1–6 (Dkt. No. 52).) Plaintiffs bring claims for damages against Defendant for (1) common law breach of express warranty; (2) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., and (3) violations of Sections 349 and 350 of the New York General Business Law ("GBL"), N.Y. Gen. Bus. Law §§ 349, 350. (*See id*. at ¶¶ 44–57, 64–70, 77–87; Mem. in Supp. of Pls. Mot. for Class Certification ("Pls. Mem.") 18–21 (Dkt. No. 97).) Before the Court is Plaintiff's Motion for Class Certification (the "Motion"). (*See generally* Pls. Mem.)[1]

For the foregoing reasons, the Court grants Plaintiffs' motion in part and denies it in part.

---

[1] The Parties submitted public (redacted) and non-public (unredacted) versions of nearly all their papers. (*See generally* Dkt.) For simplicity, the Court will refer to the public versions of each document by default unless citing to information exclusively available in the non-public (unredacted) document. When referring to the non-public version of a document, the Court will append "unredacted" to the end of the citation to the record.

I.     <u>Background</u>

A.  <u>Factual Background</u>

1.  <u>Plaintiffs' Allegations</u>

The Court assumes familiarity with the facts of this case and addresses only those necessary to decide the instant Motion.  Defendant's PestChasers purport to repel rodents through "ultrasound" technology.  (*See* SAC ¶¶ 1–2.)  The packaging states that "[r]odent activity can be reduced in 6 to 10 days," that the PestChasers are for "use anywhere indoors," that the PestChasers provide "Maximum Coverage," and that "each unit lasts 3 to 5 years."  (*Id*. ¶ 2.) Plaintiffs allege that these representations are false or deceptive because "[d]ecades of studies and dozens of peer-reviewed tests have repeatedly shown that ultrasound does not repel rodents. The PestChasers are ineffective and worthless." (*Id*.)  Further, Plaintiffs allege that "even if the technology was effective in theory, it would not work in practice because furniture, carpeting, cabinets, bedding, and the like readily absorb ultrasonic sound waves," (*id*. at ¶ 3), and because "ultrasonic sound waves cannot penetrate solid objects, they do not reach the areas where rodents live and nest," (*id*. at ¶ 4).

2.  <u>The Class Definitions</u>

Plaintiffs seek to certify six classes, (*see* Pls. Mem. 10):

**Nationwide Fraud Class**: "All persons who purchased one or more Victor PestChaser Rodent Repellers in the United States from August 29, 2013, until the date notice is provided to the Class."

**Nationwide Fraud Subclass 1 (3-year statute)**: "[A]ll persons who purchased one or more Victor PestChaser Rodent Repellers in the states of Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Idaho, Maryland, Massachusetts, Mississippi, Nevada, New Hampshire, North Carolina, South Carolina, Tennessee, Utah, and Washington from August 29, 2016, until the date notice is provided to the Class."

**Nationwide Fraud Subclass 2 (2-year statute)**: "[A]ll persons who purchased one or more Victor PestChaser Rodent Repellers in the states of Alabama, Alaska,

Kansas, Montana, Oklahoma, Oregon, Pennsylvania, Virginia, and West Virginia from August 29, 2017, until the date notice is provided to the Class."

**Multistate Breach of Express Warranty Class [1] (4 year statute)**: "All persons who purchased one or more Victor PestChaser Rodent Repellers in the states of Alaska, California, Delaware, Iowa, Kansas, Maine, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, Utah, Vermont, Virginia, Washington, West Virginia, and Wyoming, from August 29, 2015, until the date notice is provided to the Class."

**Multistate Breach of Express Warranty Subclass [2] (3-year statute)**: "[A]ll persons who purchased one or more Victor PestChaser Rodent Repellers in the state of Colorado from August 29, 2016, until the date notice is provided to the Class."

**New York Subclass**: "All persons who purchased one or more Victor PestChaser Rodent Repellers in the United States from August 29, 2015, until the date notice is provided to the Class."

(*Id*.)

B.  Procedural Background

On September 28, 2023, the Court granted in part and denied in part Defendant's Motion to Dismiss; specifically, the Court granted the Motion to Dismiss with respect Plaintiffs' breach of warranty claims for Heumann that predated October 2017, as well as Plaintiffs' unjust enrichment and injunctive relief claims, but denied the motion with respect to all other claims. (*See* Dkt. No. 63.)  Plaintiffs filed the instant Motion for Class Certification which Defendant opposed. (*See* Mot. to Certify a Class. ("Pls. Mot.") (Dkt. No. 94); Pls. Mem.; Mem. in Supp. of Pls. Mot. for Class Certification Unredacted ("Pls. Mem. Unredacted") 18–21 (Dkt. No. 95); Decl. of Timothy G. Blood ("Blood Decl.") (Dkt. No. 96); Unredacted Decl. of Timothy G. Blood ("Blood Decl. Unredacted") (Dkt. No. 98); Mem. in Opp. to Mot. to Certify a Class ("Def. Opp.") (Dkt. No. 104); Unredacted Mem. in Opp. to Mot. to Certify a Class ("Def. Opp. Unredacted") (Dkt. No. 110); Decl. of Brent Hardy in Opp. to Mot. to Certify a Class ("Hardy Decl.") (Dkt. No. 105); Unredacted Decl. of Brent Hardy in Opp. to Mot. to Certify a Class

4

("Hardy Decl. Unredacted") (Dkt. No. 111); Decl. of Ashley Brown in Opp. to Mot. to Certify a

Class ("Brown Decl.") (Dkt. No. 106); Unredacted Decl. of Ashley Brown in Opp. to Mot. to

Certify a Class ("Brown Decl. Unredacted") (Dkt. No. 112); Decl. of Robyn Bladow in Opp. to

Mot. to Certify a Class ("Bladow Decl.") (Dkt. No. 107); Decl. of Dr. Jeffrey Burgdorf in Opp.

to Mot. to Certify a Class ("Burgdorf Decl.") (Dkt. No. 108); Decl. of Dr. Paul McQuillan in

Opp. to Mot. to Certify a Class ("McQuillan Decl.") (Dkt. No. 109); Unredacted Rep. in Supp. of

Mot. to Certify a Class ("Pls. Rep. Unredacted") (Dkt. No. 114); Unredacted Rep. Aff. Of

Timothy Blood ("Blood Aff. Unredacted") (Dkt. No. 115); Unredacted Rep. in Supp. of Mot. to

Certify a Class ("Pls. Rep. Unredacted") (Dkt. No. 116); Rep. Def. Ltr. Of Supp. Authority

("Supp. Authority Letter") (Dkt. No. 120).)

## II.  Discussion

### A. Motion to Certify

#### 1. Standard of Review

Class certification is governed by Federal Rule of Civil Procedure 23.  Rule 23(a)

provides that the party seeking certification must establish that (1) the class is so numerous that

joinder of all members is impracticable; (2) there are questions of law or fact common to the

class; (3) the claims or defenses of the representative party are typical of claims or defenses of

the class; and (4) the representative party will fairly and adequately protect the interests of the

class. *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 159 (S.D.N.Y. 2014) (citing Fed. R. Civ. P.

23(a)).  These four factors are referred to as numerosity, commonality, typicality, and adequacy,

respectively. *Id; see also Kronenberg v. Allstate Ins. Co*., 743 F. Supp. 3d 465, 479 (E.D.N.Y.

2024) (same).  "A class may be certified only if, 'after a rigorous analysis,' the [C]ourt is

satisfied that the prerequisites of Rule 23(a) are met." *Woodhams v. GlaxoSmithKline Consumer*

*Healthcare Holdings (US) LLC*, No. 18-CV-3990, 2024 WL 1216595, at *9 (S.D.N.Y. Mar. 21,

2024) (alterations adopted) (quoting *Road v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir.

2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013))).

 In addition to Rule 23(a) factors, the representative party also must show that the action is

appropriate for one of the three reasons set forth in Rule 23(b).  *See id*.  Here, Plaintiffs seek

certification under Rule 23(b)(3), and so Plaintiffs must also show that "questions of law or fact

common to class members predominate over any questions affecting only individual members,

and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."  Fed. R. Civ P. 23(b)(3).  These two factors are referred to as

predominance and superiority, respectively.  *See Polvay v. FCTI, Inc.*, 713 F. Supp. 3d 1, 5

(S.D.N.Y. 2024).  Finally, the Second Circuit "[has] recognized that Rule 23 contains an implicit

threshold requirement that the members of a proposed class be readily identifiable, often

characterized as an ascertainability requirement."  *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d

Cir. 2017) (quotation marks omitted) (quoting *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,

821 F.3d 992, 995 (8th Cir. 2016)).  Thus, a representative party need only show "the existence

of objective criteria that establish a membership with definite boundaries."  *In re Actos Antitrust

Litig.,* No. 13-CV-9244, 2024 WL 4251891, at *17 (S.D.N.Y. Aug. 9, 2024) (citing *In re

Petrobras Sec.*, 862 F.3d at 269 n.20), *report and recommendation adopted*, 2024 WL 4345568

(S.D.N.Y. Sept. 30, 2024).  The party seeking class certification must establish by a

preponderance of the evidence that it has met each of the relevant Rule 23 requirements.  *See In

re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 34, 37 (2d Cir. 2006) (citation omitted);

*Woodhams*, 2024 WL 1216595, at *9 (citing *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128,

137 (2d Cir. 2015)).

"Class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 444 (S.D.N.Y. 2023) (alteration adopted) (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017)); *see also Bowling v. Johnson & Johnson*, No. 17-CV-3982, 2019 WL 1760162, at *4 (S.D.N.Y. Apr. 22, 2019) (noting that the issue of unique defenses is "relevant to both Rule 23's typicality and adequacy of representation requirements" (citation omitted)).  However, "the mere existence of individualized factual questions . . . will not bar class certification." *Gary Plastic Packaging Corp.*, 903 F.2d at 180.  Rather, there must be a "sufficiently clear showing of the defense's applicability to the representative plaintiff." *Bowling*, 2019 WL 1760162, at *4 (quoting *In re Omnicom Grp., Inc., Sec. Litig.*, No. 02-CV-4483, 2007 WL 1280640, at *4 (S.D.N.Y. Apr. 30, 2007)).

  2. <u>Analysis</u>

   a. <u>Numerosity</u>

"To satisfy Rule 23(a)(1)'s numerosity requirement, Plaintiffs must show that 'the class is so numerous that joinder of all members is impracticable.'" *Alves v. Affiliated Care of Putnam, Inc.*, No. 16-CV-1593, 2022 WL 1002817, at *20 (S.D.N.Y. Mar. 30, 2022) (quoting *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 68 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 23(a)(1))).  "In this Circuit, numerosity is presumed when the putative class has at least forty members." *Zivkovic*, 329 F.R.D. at 68–69 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  "[T]he inquiry is not strictly mathematical," *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 202 (S.D.N.Y. 2018) (citing *Pa. Pub.*

*Sch. Empls. Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014)), and "the district court must analyze each case separately to determine whether the numerosity requirement has been satisfied," *id.* "Relevant considerations include judicial economy arising from the avoidance of a multiplicity of actions, geographic dispersion of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).

Plaintiffs assert, and Defendant does not contest, that numerosity is satisfied. (*Compare* Pls. Mem. 23 (asserting that "[c]ommon sense compels the conclusion that numerosity is satisfied here" (internal quotations and citation omitted)) *with* Def. Opp. (not addressing numerosity).) Here, Plaintiffs suggest that Defendant sold millions of false or misleadingly labeled PestChasers. (*See* Pls. Mem. Unredacted 23 (referring to Blood Decl. Unredacted Ex. 13 (Dkt. No. 98-12) (stating that millions of PestChasers were sold between 2015 and 2024)).) Courts find that such numbers satisfy the numerosity requirement, and the Court does the same here. *See Andrews v. Sazerac Co., Inc.*, No. 23-CV-1060, 2025 WL 19312, at *2 (S.D.N.Y. Jan. 2, 2025) (assuming numerosity met where sales data showed defendant sold "tens of thousands" of the allegedly defective product); *Rankins v. Arca Cont'l S.A.B. de C.V.*, No. 20-CV-1756, 2024 WL 4986411, at *10 (E.D.N.Y. Oct. 30, 2024) (finding numerosity met "[b]ased on the nature of the claims in this case and Defendant's sales data"), *report and recommendation adopted*, 2024 WL 5007394 (E.D.N.Y. Dec. 6, 2024).

    b.  <u>Commonality</u>

"Commonality requires that there exist questions of law or fact that are both common to the class and answerable through a class-wide proceeding." *In re Namenda*, 331 F. Supp. 3d at

202 (citing Fed. R. Civ. P. 23(a)(2)); *see also Alves*, 2022 WL 1002817, at *21 (same). "The

Supreme Court has clarified that this prong also requires the plaintiff to demonstrate that the

class members 'have suffered the same injury.'" *Id*. (quoting *Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338, 350 (2011)). "What matters to class certification is not the raising of common

questions but rather, the capacity of a class-wide proceeding to generate common *answers* apt to

drive the resolution of the litigation." *Mangahas v. Eight Oranges Inc.*, No. 22-CV-4150, 2024

WL 2801922, at *6 (S.D.N.Y. May 31, 2024) (alterations adopted) (emphasis in original)

(quoting *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022)).

 Plaintiffs assert that commonality is met because the issue presents one common

question: whether PestChasers in fact repel rodents. (*See* Pls. Mem. 23–24.) In response,

Defendant argues that (i) Plaintiffs failed to offer common proof to establish that PestChasers fail

to repel rodents on a classwide basis; (ii) Plaintiffs' argument—that even if PestChasers did repel

rodents, they are functionally inadequate—is an inquiry "necessarily enveloped by

individualized issues"; (iii) Plaintiffs fail to adequately account for the variation in breach of

warranty and fraud laws across states; and (iv) Plaintiffs fails to offer an adequate damages

model. (*See* Def. Opp. 13.)

 Because Defendant presents these arguments as both a challenge to commonality and

predominance, the Court will address them below. *Drake v. Bayer Healthcare LLC*, No. 22-CV-

1085, 2024 WL 4204921, at *4 (S.D. Cal. Sept. 16, 2024), *appeal pending*, No. 24-7158 (9th

Cir. Nov. 26, 2024) (where defendant argued that individual issues would predominate, noting

that the commonality and predominance analyses overlap and addressing the substance of the

argument in the court's predominance analysis).

c. Typicality and Adequacy

"Typicality 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Namenda*, 331 F. Supp. 3d at 203 (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997)); *see also Polvay*, 713 F. Supp. 3d at 11 (same). "If it is 'alleged that the same unlawful conduct was directed at or affected both the named plaintiff and class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims.'" *Polvay*, 713 F. Supp. 3d at 11 (quoting *Robidoux*, 987 F.2d at 936–37).

"Adequacy requires that 'the representative parties fairly and adequately protect the interests of the class.'" *Alves*, 2022 WL 1002817, at *21 (quoting Fed. R. Civ. P. 23(a)(4)). Courts must ensure that "members of the class possess the same interests, and that no fundamental conflicts exist among members." *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013). "Adequacy is a two-step process: '[1] the proposed class representative must have an interest in vigorously pursuing the claims of the class, and [2] must have no interests antagonistic to the interests of other class members.'" *Mujo v. Jani-King Int'l, Inc.*, No. 16-CV-1990, 2019 WL 145524, at *6 (D. Conn. Jan. 9, 2019) (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)). Because Defendant challenges both typicality and adequacy based on the same arguments, the Court addresses both here. (*See* Def. Opp. 26–30.)

Plaintiffs argue, and Defendant does not contest, that Plaintiffs' firms are "well qualified to serve as class counsel in this action." (*Compare* Pls. Mem. 25 (arguing that Plaintiffs' counsel are adequate) *with* Def. Opp. (not mentioning the adequacy of Plaintiffs' counsel).) Both firms have extensive experience litigating consumer claims, including those related to false advertising

of consumer products. (*See* Pls. Mem. 25; Dkt. No. 96-4; Dkt. No. 96-5.) Thus, the Court finds

Plaintiffs' counsel meet the requirements for adequacy. *See Belendez-Desha v. JAF Commc'ns,*

*Inc.*, No. 24-CV-741, 2024 WL 5155748, at *6 (S.D.N.Y. Dec. 18, 2024) (concluding class

counsel was adequate where the firm had "extensive experience with . . . class actions"); *Charles*

*v. Pinnacle Too*, LLC, No. 22-CV-4232, 2024 WL 4491560, at *6 (S.D.N.Y. Oct. 15, 2024)

(determining that counsel was adequate where the firm had extensive experience in class actions

of the type at issue).

    Plaintiffs argue that the named Plaintiffs are typical because "the claims of Plaintiffs and

the class arise out of the same course of conduct by Defendant," (*see* Pls. Mem. 24), namely,

Defendant's representation that the Repeller would repel rodents, (*see id*.). They further argue

that the named Plaintiffs are adequate because named Plaintiffs "do not have any interest

antagonistic to absent class members." (*See id*. at 25.) Furthermore, Plaintiffs argue that named

Plaintiffs "have assisted their counsel in investigating the case, reviewed pleadings, assisted with

discovery, been in regular contact with counsel and [sat] for deposition." (*Id*.)

    Defendant contends that named Plaintiffs have "incurable conflicts with non-New York

class members," as they will be "inevitably…more motivated to prove their [NY] GBL claims

than their breach of warranty or fraud claims," because GBL claims "are the easiest to prove

with the most upside for damages." (*See* Def. Opp. 27–28.) They argue that the availability of

these claims will disincentivize Plaintiffs from rigorously pursuing the fraud and breach claims

of non-New York class members. (*See id*.)

    In support of this position, Defendant cites *In re Literary Works in Electronic Databases*

*Copyright Litigation*, 654 F.3d 242 (2d Cir. 2011), a case in which the Second Circuit vacated an

order certifying a class for settlement purposes because it found that its named plaintiffs had

interests which were fundamentally at odds with the interests of the most numerous subclass. *See id*. at 249–55.  The proposed settlement included three "categories of claims": category A, B, and C.  *See id*. at 250.  Claims A and B held more valuable claims, because category A claims were eligible for statutory damages, and category B claims were eligible for actual damages and attorneys' fees, while category C claims were not eligible for statutory damages, actual damages, or attorneys' fees until registered.  *See id.* at 251 n.6.  Further, the settlement agreement "capped recovery and administrative costs at $18 million" across all claims, and if the total settlement exceeded that cap, *only* category C claims would be reduced pro rata until the settlement hit the limit.  *See id*. at 246.  The Second Circuit found this to be a structurally flawed settlement agreement and required the interests of category C claims to be protected "by the formation of a subclass and the advocacy of independent counsel."  *See id*. at 254.

Here, named Plaintiffs' claims are covered under GBL §§ 349, 350.  (*See* SAC ¶¶ 44–55.)  GBL § 349 permits Plaintiffs to recover actual damages or fifty dollars, whichever is greater, and GBL § 350 permits Plaintiffs to recover actual damages or $500, whichever is greater—a recovery which likely exceeds actual damages.  (*See* Pls. Mem. 28, 30–31.)  Furthermore, claims under GBL §§ 349, 350 are likely to be easier to prove, because they do not require a showing of reliance and scienter.  *Compare Fuller v. Stop & Shop Supermarket Co. LLC,* No. 22-CV-9824, 2023 WL 8005319, at *7 (S.D.N.Y. Nov. 17, 2023) (stating that the elements of common law fraud are that "(1) the defendant made a material false statement or omission; (2) the defendant *intended* to defraud the plaintiff; (3) the plaintiff *reasonably relied* upon the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance." (emphasis added)) *and Schneider v. Colgate-Palmolive Co*., 677 F. Supp. 3d 91, 102 (N.D.N.Y. 2023) (stating that the elements of breach of express warranty are "(1) the existence

of a material statement amounting to a warranty, (2) the buyer's *reliance* on this warranty as a

basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the

buyer caused by the breach." (emphasis added) (citation and internal quotation marks omitted))

*with Sheiner v. Supervalu Inc.*, No. 22-CV-10262, 2024 WL 2803030, at *3 (S.D.N.Y. May 28,

2024) (stating that the elements of GBL §§ 349, 350 are that "defendant has engaged in

(1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff

suffered injury as a result of the allegedly deceptive act or practice."). In short, Plaintiffs' GBL

claims are easier to prove and are likely to have a higher recovery.

Defendant argues that this discrepancy will make Plaintiffs "much more motivated to

prove their GBL claims than their breach of warranty claims," putting them in conflict with

"non-New York class members without GBL claims." (*See* Def. Opp. 27.) The Court agrees. At

least one other court in this District applied similar logic to that of *In re Literary Works* to deny

class certification where the structure of representation puts named plaintiffs' interests in conflict

with remaining class members. In *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F.

Supp. 3d 430 (S.D.N.Y. 2018), the Court found that the proposed class failed to meet the

adequacy of representation requirement because, inter alia, the named plaintiff had "incentive to

establish trader-based manipulation only on days when it held trading positions that would have

been harmed by that manipulation." *Id*. at 539. Similarly, here, the Court finds that named

Plaintiffs' eligibility to recover under NY GBL §§ 349 and 350 reduces Plaintiffs' incentive to

establish facts necessary to show scienter and reliance, as required for the common law claims to

succeed.

Here, the Court finds that that the structure of the class places named Plaintiffs' interests

at cross-purposes with non-New York class members, in that their best opportunity for the most

recovery involves a cause of action which (i) does not apply to the non-New York class members, (ii) is easier to prove than those which do apply to non-New York class members (because Plaintiffs are not required to show reliance and scienter), and (iii) is likely to lead to a larger payout (because Plaintiffs succeeding under such claims are eligible for statutory damages). For this reason, representation is inadequate as to the non-New York breach of express warranty and multistate common law fraud claims. The Court therefore denies certification as to those subclasses.

Defendant further argues that Maroney is an inadequate representative because he does not possess the requisite knowledge for the role. (*See* Def. Opp. 28.) While it is true that class representatives must demonstrate "knowledge" and "involvement" in the litigation, *see Passman*, 671 F. Supp. 3d at 447, the Second Circuit has cautioned that "attacks on the adequacy of a class representative based on the representative's ignorance" are "disfavor[ed]," *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 42 (2d Cir. 2009) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000)). A fair reading of Maroney's deposition transcript suggests that he understands the nature of the lawsuit, the nature of the harm, that he is a class representative, and the ultimate aims of the lawsuit. (*See* Blood Aff. Ex. 18 ("Maroney Dep.") 44:9–10 (Dkt. No. 116-2) (identifying when the lawsuit was filed); *id*. at 56:6–14 (identifying what a class representative does); *id.* at 31:2–5, 35:4–8 (stating his desire for recovery for himself and the class as a whole).)

These statements are sufficient to demonstrate Maroney's adequacy. *See Baffa*, 222 F.3d at 61 (finding the eighteen year-old plaintiff adequate to serve as a named plaintiff in securities case despite the fact that he did not know basic information about his account, including the value of the securities, the type of securities, and the investments made); *Vergara v. Apple REIT*

*Nine, Inc.*, No. 19-CV-2027, 2021 WL 1103348, at *3 (E.D.N.Y. Feb. 5, 2021) (concluding

plaintiff was adequate where "plaintiff's testimony demonstrated a firm, albeit basic, grasp of the

allegations in [the] case"); *Jacobs v. Verizon Commc'ns Inc*., No. 16-CV-1082*, 2020 WL

4601243, at *11–12 (S.D.N.Y. June 1, 2020) (finding the plaintiff adequate in spite of the fact

that she did not recognize her own investments, could not recall whether plaintiffs and

defendants had been dismissed, and at times could not articulate what the case was about), *report

and recommendation adopted*, 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020).[2]

      Defendant also argues that Heumann is atypical and inadequate because he is subject to

"unique defense that threaten to become the focus the litigation." (*See* Def. Opp. 28–30.)

Specifically, Defendant argues that Heumann is subject to a statute of limitations defense and a

voluntary payment defense. (*See id*.) As an initial matter, the Court is not convinced either

defense properly applies.[3]

---

[2] As to Defendant's contention that Maroney is overly reliant his counsel, "[f]ar from
showing [Plaintiff's] ignorance of the litigation or his inability to serve as a class-representative,
it demonstrates [Plaintiff's] ability to appreciate the limits of his knowledge and rely on those
with the relevant expertise." *See Baffa*, 222 F.3d at 62.

[3] Plaintiffs filed suit in September 2019. (*See* Dkt. No. 1.) As Defendant points out,
their N.Y. GBL claims have a three-year statute of limitations and their common law claims are
subject to a six- and four-year statute of limitations. *See Gaidon v. Guardian Life Ins. Co. of Am.*,
96 N.Y.2d 201, 208 (N.Y. 2001) (holding that a three-year statute of limitations applied to claims
under N.Y. GBL §349); *Basso v. New York Univ.*, No. 16-CV-7295, 2018 WL 2694430 , at *2
(S.D.N.Y. June 5, 2018) (noting that the three-year statute of limitations applies to both N.Y.
GBL §349 and §350); *Kumaran v. Northland Energy Trading, LLC*, No. 19-CV-8345, 2024 WL
5317374, at *7 (S.D.N.Y. Jan. 10, 2025) ("Claims for fraud have a six-year statute of
limitations." (citing NY CPLR 213(8)); *Weiss v. Polymer Plastics Corp.*, 802 N.Y.S.2d 174, 176
(2005) ("[T]he four-year statute of limitations applies to the causes of action alleging breach of
express and implied warranties.")
    Despite the fact that Heumann appears to be uncertain about when he purchased many of
the Repellers in his possession, he nonetheless testified that he purchased additional Repellers
*after* his October 18, 2017 letter to Woodstream. (*See* Decl. of Robyn Bladow ("Bladow Decl.")
Ex. L ("Heumann Dep. Excerpts") 150:7–9, 151:16–25, 152:2–4 (Dkt. No. 107-1)). Such a
purchase is clearly within the statute of limitations.

"Moreover, it is not entirely clear either defense will be atypical." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 406 (S.D.N.Y. 2015).  Courts have previously found typicality satisfied even where the plaintiff is subject to specific defenses, if those defenses may be applicable to members of the class as well. *See Kurtz*, 321 F.R.D. at 534 ("Where a defense applicable to a class representative may also be widely applicable to members of the class, the presence of such a defense is not atypical"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406 (same); *Dupler*, 249 F.R.D. at 39 (same).  It seems likely that many class members will have difficulty remembering when, in the last decade or so, they purchased a Repeller from their local hardware store.[4]  And it is unlikely that Heumann is unique in having repurchased the PestChasers after a previously unsatisfactory experience.  These facts do not defeat typicality. *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 406 ("[I]t is not entirely clear [the voluntary payment] defense will be atypical.  It is likely many class members purchased EZ Seed twice.")  Therefore, any defenses Defendant

---

As to the question of voluntary payment: "[t]he voluntary payment doctrine bars recovery of payments voluntarily made with full knowledge of the facts." *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 406 n.4 (S.D.N.Y. 2015) (quoting *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 38 (E.D.N.Y.2008)).  Defendant argues any purchase made after his October 2017 letter to Woodstream is subject to the voluntary payment defense because "he had already formed a belief that the products did not work, but continued to purchase them anyway." (*See* Def. Opp. 30.) But a fair reading of the record indicates that in response to his letter, Woodstream suggested that Plaintiff was misusing the product.  Thus, it is less than clear that Plaintiff had "full knowledge" of the fact that the Repellers did not function as advertised. *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017) (expressing uncertainty as to the applicability of the voluntary payment doctrine where the plaintiff had a subjective, rather than "objective" belief that the product did not function as advertised); *Dupler*, 249 F.R.D. at 39 (suggesting the voluntary payment doctrine would not apply where it was not clear that the plaintiff had "full knowledge" of the facts in issue).

[4]  Where consumer injuries are small but widespread, consumers are unlikely to be able to produce receipts or other records of their purchases. *Cf. Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411, 2016 WL 3844334, at *7 n.8 (N.D. Cal. July 15, 2016) (noting that "requiring consumer class members to produce receipts to demonstrate their purchases in order to recover would essentially preclude relief for most consumer injuries.").

proposes to raise as to Heumann are unlikely to be atypical, and thus he is an appropriate class representative.

d.  <u>Ascertainably</u>

"[T]he ascertainability requirement 'requires only that a class be defined using objective criteria that establish a membership with definite boundaries.'" *Polvay*, 713 F. Supp. 3d at 11 (quoting *In re Petrobras Sec.*, 862 F.3d at 264).  The standard is "not demanding and is designed only to prevent the certification of a class whose membership is truly indeterminable." *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 407 (quoting *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 567 (S.D.N.Y. 2014)).

Plaintiffs assert, and Defendant does not dispute, the class is ascertainable because it is "it is defined as people 'who purchased' the subject product during a stated time period." (*See* Pls. Mem. 26.)  Courts in the Second Circuit have found that in cases where the class action is based on a uniform misrepresentation, ascertainability is met despite the fact that members of the class are unlikely to keep receipts.  *See Kurtz*, 321 F.R.D. at 539 (holding the class sufficiently specific to be ascertainable because it "identif[ied] a particular group of individuals who were harmed in a particular way (defrauded by labels and marketing materials) during a specific period in particular areas." (alterations adopted) (citations omitted)); *Ebin*, 297 F.R.D. at 567 (concluding that a more restrictive ascertainability inquiry would "would render class actions against producers almost impossible to bring"); *cf. Ault v. J.M. Smucker Co.,* 310 F.R.D. 59, 65–66 (S.D.N.Y. 2015) (finding consumer class unascertainable because the products at issue were not uniform).  Here, the alleged misrepresentation is uniform across the challenged products.  All products claim to repel pests, and Plaintiffs claim that representation is false and deceptive.  Thus, the Court finds the class ascertainable.  (*See* Pls. Mem. 16 (challenging the "common

misrepresentation" that each model repels pests); Blood Decl. Unredacted Ex. 1, ("Ashley

Brown Dep.") 75:7–76:25 (Dkt. No. 98-1) (agreeing that each model of Repeller has consistent

messaging).)

    e. <u>Predominance</u>

  "The predominance requirement is satisfied if resolution of some of the legal or factual

questions that qualify each class member's case as a genuine controversy can be achieved

through generalized proof, and if these particular issues are more substantial than the issues

subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108,

118 (2d Cir. 2013) (citation and quotation marks omitted); *Alves*, 2022 WL 1002817, at *22

(same). Although "commonality, typicality, and predominance overlap," *Wynn v. N.Y.C. Hous.*

*Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016), predominance is "even more demanding" than the

Rule 23(a) requirements, *Comcast Corp.*, 569 U.S. at 33.  However, Rule 23(b)(3) only requires

"a showing that *questions* common to the class predominate, not that those questions will be

answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*,

568 U.S. 455, 459 (2013) (emphasis in original).

  Defendant makes four arguments against finding predominance or commonality met.

(*See* Def. Opp. 13.)  First, Defendant argues that Plaintiffs have failed to meet their burden by

failing "to proffer common proof to establish whether [PestChasers] fail to repel rodents on a

classwide basis." (*See id*.)  Second, Plaintiff's contention that even if the PestChasers work, they

lack functional value, is an "inquiry necessarily enveloped by individualized issues." (*See id*.)

Third, Defendant argues that Plaintiffs' common law causes of action are sufficiently different

by state to prevent common questions of law from predominating. (*See id*.)  Finally, Defendant

alleges that Plaintiffs' damages model is insufficient. (*See id*.)

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Sjunde AP-Fonden v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084, 2024 WL 1497110, at *10 (S.D.N.Y. Apr. 5, 2024) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.,* 563 U.S. 804, 809–10 (2011)).

### i. New York GBL §§ 349, 350

The Parties primarily dispute whether Plaintiffs have shown that there are common questions of law or fact as to whether the PestChasers' are misleading.  Plaintiffs allege the product is materially misleading because its packaging causes customers to believe it will repel pests, when in fact it will not.  (*See* Pls. Mem. 16–18; Pls. Mem. Unredacted 16–18.)  "In interpreting sections 349 and 350 of the GBL, the New York Court of Appeals has adopted an objective definition of misleading, under which the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Andrews*, 2025 WL 19312, at *3 (internal citations and quotations omitted).

As to Defendant's first argument (that Plaintiffs have not sufficiently alleged misrepresentation) the Court finds that Defendant conflates the merits of Plaintiff's claims, which are not at issue at this stage, with Plaintiff's burden at the class certification stage.  In response to a substantially similar predominance challenge, another court noted: "[t]he 'Second Circuit has held that the predominance requirement is met for claims sounding in fraud that are based on uniform representations made to all members of the class.'" *Hart v. BHH, LLC*, No. 15-CV-4804, 2017 WL 2912519, at *8 (S.D.N.Y. July 7, 2017) (quoting *Ebin*, 297 F.R.D. at 569)); *see also Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) ("Fraud actions must therefore be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized

misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof." (alteration adopted)).

Applying this principle here, the fundamental question is not whether Defendant's representations about the product are in fact fraudulent, but rather whether resolution of Plaintiff's claims is susceptible to class-wide proof. *See Amgen Inc.*, 568 U.S. at 470 ("This is not a case in which the asserted problem . . . exhibits some fatal dissimilarity among class members that would make use of the class-action device inefficient or unfair. Instead, what [the defendant] alleges is a fatal similarity—an alleged failure of proof as to an element of the plaintiffs' cause of action. Such a contention is properly addressed at trial or in a ruling on a summary-judgment motion." (quotations and citations omitted) (alterations adopted)); *Andrews*, 2025 WL 19312, at *4 (noting that "whether plaintiffs can succeed on their claim that the product's packaging is materially misleading goes to the merits, not to class certification."); *Passman*, 671 F. Supp. 3d at 452 (holding that where a question is found to be capable of classwide resolution, "the [n]amed [p]laintiffs are not required to proffer at this stage the evidence that they will offer at trial").

Here, Plaintiffs allege that Defendant makes a uniform misrepresentation about the PestChasers: that they repel rodents. (*See* Pls. Mem. 16 (stating, inter alia, "[a]ll of the product packaging makes the same advertised promise: that Defendant's PestChaser will repel rodents").) Whether such a claim is supported by the evidence in the record is a merits question reserved for summary judgement or trial, not class certification.

Plaintiffs also claim that even if the PestChasers may demonstrate *some* efficacy in controlled laboratory conditions, they are nevertheless "worthless in real life." (*See id*. at 13; *see also* Pls. Mem. Unredacted 13–16.) Defendant argues that proof of such an allegation will

necessarily "require individualized evidence on factors impacting real world efficacy," such as: "whether the PestChasers were used correctly; whether the user followed the instructions (*e.g.*, cleared surrounding objects, used indoors); where the individual used the PestChasers; whether the PestChasers were obstructed; what size room; and so on." (*See* Def. Opp. 20.) That is, Defendant contends that individual issues of product misuse may predominate and thereby counsel against certification.

In *In re Amla Litigation*, 328 F.R.D. 127 (S.D.N.Y. 2018), the court was faced with a similar argument by the defendants, who moved to decertify a class on the basis that defects experienced by class members using a hair relaxer may have been the product of individual misuse and thus were not susceptible to class-wide proof of harm. *See id*. at 135. The *Amla* court rejected this argument, concluding that "[the defendant] may argue to the jury that any defects were exceptional, or that failure was the result of misuse, and it will be the plaintiffs' burden to prove otherwise." *Id*.

Similarly, in *In re Scotts EZ Seed Litigation*, the court rejected defendant's arguments that individual issues predominated on the question of why any particular user failed to find success with the product, in part because the plaintiffs' theory was that "nobody was able to grow grass using EZ Seed" and arguments to the contrary went to the merits of the plaintiff's theory, not their appropriateness for class-wide resolution. *Compare* Def. Mem. in Opp. to Pls. Mot. to Certify a Class at 25, *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397 (2015) (No. 12-CV-4727) *with In re Scotts EZ Seed Litig.*, 304 F.R.D. at 408–09 (rejecting defendant's contention that "the question why anyone failed to grow grass is highly individualized" as "generally represent[ing] a misunderstanding of plaintiffs' two theories of liability in this case—neither of these theories depend on whether an individual was able to grow grass using EZ Seed.").

21

These holdings are consistent with the one in *Hart*.  There, the plaintiffs argued that certification was appropriate both because the pest repeller was ineffective at repelling rodents in laboratory studies *and* because the pest repeller did not work in the home.  *See* Pls. Mem. in Supp. of Mot. to Certify a Class at 9, Hart v. BHH, LLC, 2017 WL 2912519 (S.D.N.Y July 7, 2017) (No. 15-CV-4804).  The *Hart* court held that predominance was met as to the question of injury.  *Hart*, 2017 WL 2912519, at *7–8.

The Court finds the reasoning of these cases persuasive.  Applying that reasoning here, Defendant may well argue, either in a summary judgment motion or to a jury, that a reasonable user of the product would not have interpreted its packaging in the way that Plaintiffs did or would not have used the product in the manner that they did.  However, the mere possibility of such an argument does not defeat predominance.  *See Kimberly-Clark Corp.*, 321 F.R.D. at 549 ("The question of whether the products do not disintegrate [i.e., are not flushable] 'for some individuals goes solely to the merits; it has no relevance to the class certification issue.'"); *In re Scotts EZ Seed*, 304 F.R.D. at 408–409 ("Any argument that challenges the merits of plaintiffs' allegations 'about the uniform inefficacy of EZ Seed has no bearing on the Rule 23 predominance inquiry.'" (quoting *Forcellati v. Hyland's, Inc*., No. 12-CV-1983, 2014 WL 1410264, at *12 (C.D. Cal. Apr. 9, 2014) (alterations adopted))).  Therefore, the Court holds that common questions predominate over individualized inquiries in determining whether consumers found the labels materially misleading.[5]

---

[5] The Court does not address the issue of materiality at this stage, because proving materiality is not a question that must be answered in the context of class certification.  *See Amgen*, 568 U.S. at 468 (holding that "under the plain language of Rule 23(b)(3), plaintiffs are not required to prove materiality at the class-certification stage.").

Furthermore, the Court concludes that the causes of Plaintiffs' alleged injuries (paying for a product that was worthless for its advertised purpose) to be common to all members of the class. "For product labeling cases such as this, reliance and causation are generally established through the presumption that a customer would not have purchased the product for any other reason than the advertised one." *Hart*, 2017 WL 2912519 at *8; *see also In re Amla Litig.*, 282 F. Supp. 751, 760 (S.D.N.Y. 2017) (noting that "a misrepresentation may be so fundamental to the product itself that any purchaser would necessarily rely on it.").

Therefore, the Court concludes that common questions predominate as to Plaintiffs' New York GBL claims.

ii.    Common Law Fraud

The basic elements of fraudulent misrepresentation are "(1) that the defendant made a material misrepresentation, with (2) scienter (i.e., the intent to defraud), and (3) that the plaintiff relied on the misrepresentation to her detriment (i.e., she suffered an injury proximately caused by the misrepresentation)." *In re Amla Litig.*, 282 F. Supp. 3d at 759.[6]

"The Second Circuit has held that 'fraud claims based on uniform misrepresentations made to all members of the class,' unlike those 'based on individualized misrepresentations,' are 'appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof.'" *Id*. (quoting *Moore*, 306 F.3d at 1253). As discussed above, Plaintiffs' claims center on a common misrepresentation: that the PestChasers in fact repel rodents. This is a uniform misrepresentation which may be established by generalized proof.

---

[6] Because the Court holds that named Plaintiffs are inadequate representatives of non-New York class members, the Court need not address Defendant's claim that Plaintiff has insufficiently analyzed the variation between state fraud laws. (*See* Def. Opp. 23–24.)

*Hart*, 2017 WL 2912519, at *8 (noting that "the 'Second Circuit has held that the predominance requirement is met for claims sounding in fraud that are based on uniform representations made to all members of the class." (quoting *Ebin*, 297 F.R.D. at 569)); *see also Moore*, 306 F.3d at 1253 ("Fraud actions must therefore be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations.  The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof.").

Finally, as noted above, in product labeling cases where the plaintiff's claim is that the only reason a class member would have purchased the product is because of the misrepresentation, reliance is subject to generalized proof.  *Hart*, 2017 WL 2912519 at *8 (noting that "[f]or product labeling cases such as this, reliance and causation are generally established through the presumption that a customer would not have purchased the product for any other reason than the advertised one."); *In re Amla Litig.*, 282 F. Supp. at 760 (noting that "a misrepresentation may be so fundamental to the product itself that any purchaser would necessarily rely on it.").

Therefore, the Court concludes that Plaintiffs have demonstrated that common questions predominate as to Plaintiffs' claim of common law fraud.

### iii.    Common Law Breach of Warranty

Claims for breach of warranty under New York law are governed by the UCC.  *See Cohen v. Nutricost*, 747 F. Supp. 3d 467, 481 (E.D.N.Y. 2024) (noting that "[i]n New York, express warranties are governed by Section 2-313"); *accord* UCC § 2-313.  "New York breach of express warranty claims require (i) a material statement amounting to a warranty; (ii) the buyer's reliance on this warranty as a basis for the contract with his immediate seller; (iii) the

breach of this warranty; and (iv) injury to the buyer caused by the breach." *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) (italics omitted) (quoting *Brady v. Basic Rsch., L.L.C.*, 101 F. Supp. 3d 217, 235 (E.D.N.Y. 2015)).[7]

---

[7] The Parties dispute whether a privity requirement also applies in this context. Plaintiffs argue that New York law does not have a privity requirement in express breach of warranty claims, (*see* Pls. Mem. 20; Pls. Rep. 8), while Defendant argues that it does, (*see* Def. Opp. 22).

In 1962, the New York Court of Appeals ruled that the privity requirement did not apply to breach of express warranty claims. *See Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 181 N.E.2d 399, 404 (N.Y. 1962) (dispensing with the privity requirement in breach of express warranty claims). In 1964, New York adopted the Uniform Commercial Code ("UCC"). *See Feinstein v. Firestone Tire & Rubber Co.,* 535 F. Supp. 595, 599 n.3 (S.D.N.Y. 1982) (noting that "[t]hese quotations are from the U.C.C. as enacted in New York State, effective September 27, 1964.") Importantly, Sections 2-313 and 2-318 of the UCC, which control breach of warranty claims, include annotations and official comments which suggest that the legislature did not intend the UCC to curtail the Court of Appeals' holding in *Randy Knitwear*. UCC § 2-313, comment 2 notes that:

> [a]lthough this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract.

*See* UCC § 2-313. The annotations to UCC Section 2-318 specifically note that the UCC was "in no way . . . intended to limit the extension of warranty protection by the courts to a greater number of plaintiffs or the expansion of the manufacturer's liability as in *Randy Knitwear*." UCC § 2-318, N.Y. Annotations. These notes and annotations strongly suggest that the UCC's drafters intended to preserve the Court of Appeals' holding in *Randy Knitwear*.

Despite this evidence of legislative intent, some courts in the Second Circuit held that the UCC superseded *Randy Knitwear*. *See, e.g., Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 550 (S.D.N.Y. 2022) (noting that, "under New York law, privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured."); *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013) ("[P]laintiffs neglect to mention that *Randy Knitwear* preceded the enactment of the UCC, which displaced it."). The Second Circuit agreed with these lower court holdings in 2023, in *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89 (2d Cir. 2023). In that case, the Circuit held—without elaboration—that "under New York law, express and implied breach of warranty claims seeking to recover for financial injuries . . . require a showing of privity between the manufacturer and the plaintiff unless an exception applies." *See id*. at 101 (quoting *Ebin*, 2013 WL 6504547, at *6).

Ordinarily, such an unambiguous statement would be the end of the inquiry, because as a general rule this Court is "bound to apply Second Circuit precedent." *Grossman v. Simply*

For the reasons outlined in the Court's discussion of Plaintiffs' New York GBL §§ 349, 350 and common law fraud claims, the (i) misstatement, (ii) reliance, (iii) breach, and (iv) causation elements of Plaintiffs' claims are predominated by common questions of law and fact. *Hart*, 2017 WL 2912519 at *8 (noting that, "[f]or product labeling cases such as this, reliance and causation are generally established through the presumption that a customer would not have purchased the product for any other reason than the advertised one."); *In re Amla Litig.*, 282 F. Supp. at 760 (noting that "a misrepresentation may be so fundamental to the product itself that any purchaser would necessarily rely on it."); *Moore*, 306 F.3d at 1253 (noting that "[f]raud actions must therefore be separated into two categories: fraud claims based on uniform misrepresentations made to all members of the class and fraud claims based on individualized misrepresentations. The former are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof.").

---

*Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 274 n.4 (E.D.N.Y. 2021). Nevertheless, "[i]n applying New York law, this Court is bound by the decisions of New York's highest court, the Court of Appeals." *Carroll v. Trump*, 731 F. Supp. 3d 626, 632 (S.D.N.Y. 2024); *Cohen v. Nutricost*, 747 F. Supp. 3d 467, 484 (E.D.N.Y. 2024) (noting that "[d]iversity cases involving a state law claim present an exception to [the] general rule" that "a decision of the Second Circuit is binding on a district court" (internal quotations omitted and alterations adopted)).

In *Cohen*, another district court in this Circuit was faced with a similar dilemma. *Cohen*, 747 F. Supp. 3d at 482–85. After canvassing rulings of New York state courts and the UCC's notes and annotations, the *Cohen* court determined that it was bound to apply the holding in *Randy Knitwear* instead of the Second Circuit's holding in *MacNaughton*. *See id*. at 484–85. The Court finds the reasoning of *Cohen* persuasive. In particular, the Court finds the notes and annotations of UCC Sections 2-313 and 2-318 unequivocally indicate that those UCC provisions were not intended to overrule the New York Court of Appeals' holding in *Randy Knitwear*. *See id*. at 437–38. The Second Circuit did not address the clear language of these provisions in its holding, *see MacNaughton*, 67 F.4th at 101, and therefore the Court determines it is bound to apply *Randy Knitwear*, *see Cohen*, 747 F. Supp. 3d at 485; *cf. Eng'rs Constr., Inc. v. Constr. Contracting & Maint. LLC*, No. 21-CV-239, 2023 WL 8622052, at *3 (D. Vt. Nov. 9, 2023) (noting that "[f]ederal courts, when applying state law, are bound to apply the law as established by the state's highest court." (quoting *Donohue v. Cuomo*, 980 F.3d 53, 65 (2d Cir. 2020)).

Accordingly, the Court finds certification of the breach of express warranties claim appropriate.

iv.    <u>Damages</u>

To satisfy this element of the predominance requirement, Plaintiffs must propose a damages model consistent with their theory of liability.  *See Comcast Corp.*, 569 U.S. at 33. Crucially, this theory need only show that Plaintiffs' damages are *susceptible* to common proof, not that Plaintiffs are currently able to prove damages.  *See Mirkin v. XOOM Energy, LLC*, No. 18-CV-2949, 2024 WL 5116873, at *2 (E.D.N.Y. Dec. 16, 2024) (denying the defendant's motion to decertify a class where the "crux of [the defendant's] argument [was] not that [damages] are *insusceptible* to common proof, but that plaintiff *lacks sufficient common proof*" (emphasis in original)).

Plaintiffs' damages model is as follows: "The [PestChasers] are worthless for their advertised purpose because they do not repel rodents, entitling class members to refunds."  (*See* Pls. Mem. 30.)  Plaintiffs assert that class-wide damages can be assessed based on Defendant's records, which allegedly can be used to determine sales and average retail prices.  Plaintiffs further allege that they intend to pursue GBL statutory damages of $50 or $500 under § 349 and § 350, respectively.  (*See* Pls. Mem. 30–31.)  Defendant argues this damages model is inadequate, both because it is an insufficient model in the first instance and because Plaintiffs have not demonstrated it is workable.  (*See* Def. Opp. 25–26.)

This Court concludes that Plaintiffs' damages model is adequately tied to its theory of liability.  Plaintiffs allege that the PestChasers are worthless because they do not perform the sole function for which Plaintiffs purchased them, and they seek to recover damages for the full value that they paid.  Other courts in have found substantially similar damages models acceptable.  *See*

*Rodriguez v. It's Just Lunch Int'l*, No. 07-CV-9227, 2018 WL 3733944, at *4 (S.D.N.Y. Aug. 6, 2018) (noting that a full refund model was "workable" because it was "directly linked with [plaintiffs'] underlying theory of classwide liability" (citing *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013))); *In re Scotts EZ Seed Litig.*, 304 F.R.D at 412 (concluding that a full-refund theory of damages "satisfies *Comcast* because it measures damages properly if [the product] is valueless."); *see also Allen v. Hyland's Inc.*, 300 F.R.D. 643, 671 (C.D. Cal. 2014) (finding that "[p]laintiffs' damages theory—predicated on the notion that class members are entitled to full restitution for products with no value—is consistent with [p]laintiffs' liability theory.").

Furthermore, the Court concludes that while Plaintiffs have not submitted a particularly robust damages model, they have nonetheless demonstrated that there is a class-wide method of awarding relief. *See Martin v. Monsanto Co.*, No. 16-CV-162168, 2017 WL 1115167, at *8 (C.D. Cal. Mar. 24, 2017) (concluding that the plaintiff's damages model adequate under *Comcast* even though it was "simplistic"). Plaintiffs indicate they have subpoenaed the five largest third-party retailers of PestChasers and expect to receive data revealing—for each model—the number of units sold and the corresponding retail price of each of each model. (*See* Blood Aff. ¶ 5.) Because Plaintiffs are alleging a simple theory of damages (that class members are entitled to a full refund for a product that was worthless), this damages model is sufficient, and an expert is not required. *See Larsen v. PTT, LLC*, No. 18-CV-5275, 2024 WL 4481216, at *4 (W.D. Wash. Apr. 17, 2024) (concluding that a "full refund" damages model "is not complex and does not require expert testimony")*; Rodriguez*, 2018 WL 3733944, at *4 (holding that the plaintiffs' full-refund damages model adequate under *Comcast* even though the plaintiffs did not disclose an expert).

Defendant also argues that Plaintiffs need to demonstrate individualized causation to recover statutory damages under GBL §§ 349, 350. (*See* Def. Opp. 26.) In support of this position, Defendant cites *Ackerman v. Coca-Cola Co.*, No. 09-CV-395, 2013 WL 7044866, at *20 n. 32 (E.D.N.Y. July 18, 2013), but that case is distinguishable.[8] In *Ackerman*, the court found that that inquiry into injury, and thus damages, raised too many individualized questions to satisfy predominance. *See id*. at *20 & n.32. But in that case, the theory of damages was a "price premium" theory. *See id*. at *20. A "price premium" theory of damages is appropriate where the plaintiff alleges that they "paid more than they would have for the good but for the deceptive practices of the defendant-sellers." *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015). This ordinarily involves a comparison between the price paid for a product advertised as "enhanced" in some way, and the same kind of product without enhancement. *See, e.g.*, *In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 603 (S.D.N.Y. 2021)

---

[8] Defendant also cites *Pagan v. Abbott Lab'ys, Inc.*, 287 F.R.D. 139, 151 (E.D.N.Y. 2012). In that case, the plaintiffs brought a class action against a baby formula manufacturer, where beetles and their larvae had been found in its powdered formula. *See id*. at 142. The court denied the plaintiffs' motion to certify a class under the GBL because, inter alia, the plaintiffs could not show that all class members had been injured by the contaminated formula, or that their injuries were *caused* by the contamination. *See id*. at 151. But *Pagan* is inapposite. In that case, only some formula containers were contaminated, and therefore the questions of injury and causation would necessarily entail a case-by-case determination. *See id*. at 148–49 (finding that "the evidence in this case suggests that most of the members of this class would have not suffered any injury at all because almost all of the recalled [product] did not, in fact, contain any beetle parts. . . [a]ccordingly, the [p]laintiffs have not satisfied the commonality requirement for the New York class, because they have not adequately demonstrated how the [d]efendant's alleged deceptive practices caused any injury, let alone the same injury, to the majority of the class members.")

In this case, Plaintiffs allege that *each* member of the class was exposed to the *same* misrepresentation—that the Repellers would, in fact, repel insects. (*See* Pls. Mem. Unredacted 11–13.) Because the alleged injury to each class member is the same (i.e., that the product was worthless) and causation was identical (i.e., that people bought the worthless product for the sole purpose of repelling insects), *Pagan*'s logic does not apply.

(relying on price premium theory to determine the premium paid by consumers for food labeled "All Natural" and "Non-GMO"). Courts in those cases are required to determine how much each class member *would have* paid for the product absent the enhancement, which they have occasionally concluded requires an individualized inquiry. *See id*; *Ackerman*, 2013 WL 7044866, at *20 (finding individualized questions predominated where the parties would have had to determine how much each individual *would* have paid for Vitamin Water absent its misleading labeling).

Here, Plaintiffs' theory is that the product is entirely worthless—i.e., that class members would not have paid for the PestChasers *at all* absent Defendant's representations. (*See* Pls. Mem. 30.). That is, no individualized questions predominate because Plaintiffs allege no class member would have paid *anything* for the PestChasers absent the misrepresentation. That allegation may turn out to be in fact unsupported, but that is not relevant to the Court's determination at this stage. *See Rodriguez*, 2018 WL 3733944, at *4 (rejecting a challenge to the plaintiff's damages model because it went "'to the proof of the merits of plaintiffs' claims,' not their amenability to certification." (citing *In re Scotts EZ Seed Litig.*, 304 F.R.D. at 408)).

For these reasons, the Court finds causation for statutory damages may be alleged generally under GBL §§ 349, 350. *See In re Amla Litig.*, 282 F. Supp. 3d at 768 (concluding that individual questions would not predominate where plaintiffs sought statutory damages under GBL §§ 349, 350 because plaintiffs "argue[d] that the product was rendered 'worthless'" by its defects).

Finally, Defendant argues that Plaintiffs have not proposed an adequate classwide damages model for their "functional failure" theory, because their model does not account the way "real life" conditions "affect the value each customer receives from [the PestChasers]."

(*See* Def. Opp. 26.)  This argument misapprehends Plaintiffs' position.  Plaintiffs do not allege

that PestChasers provide some value to some customers, even under the "functional value"

theory.  Instead, they allege that when used in the home, PestChasers are "functionally

worthless."  (*See* Pls. Mem. 16 ("Simply put. . . this product provided no value to customers").)

Therefore, the preceding analysis applies, and the Court holds that Plaintiffs demonstrated that

their damages calculation is subject to class-wide proof.

> f.  Superiority

Finally, a proposed class must satisfy the superiority requirement, which necessitates a

finding that "a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  In making this determination, courts

consider

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions; (B) the extent and nature of any litigation concerning
> the controversy already begun by or against class members; (C) the desirability or
> undesirability of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.

*Id.*  Where, as here, proceeding individually would be prohibitive for class members with small

claims, the first factor favors certification.  *See In re Scotts EZ Seed Litig.*, 304 F.R.D. at 415.

There is no indication that other litigation concerning this controversy is ongoing and no reason

that this litigation should not be concentrated before the Court.  "Finally, any concerns about

manageability 'rely, almost entirely, on a premise the Court has already rejected—namely, that

innumerable individualized inquiries will swallow common ones.'"  *Id.* (quoting *Haddock v.*

*Nationwide Fin. Servs., Inc.*, 293 F.R.D. 272, 287 (D. Conn.2013)).

For this reason, the Court finds the superiority requirement is met.

III.    Conclusion

For the reasons set forth above, Plaintiffs' Motion is granted as to the GBL §§ 349, 350 claims and New York common law fraud and breach of express warranty claims but denied as to all other class members. The Clerk of the Court is respectfully directed to terminate the pending motion at Dkt. No. 94.[9]

SO ORDERED.


Dated:    March 28, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

---

[9] Because unredacted versions of these Motions and accompanying Memorandum were filed  under seal, the Parties may have two weeks from the date of this Opinion & Order (the "Opinion") to propose redactions to the Opinion before it is issued publicly.